## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PLASTAG HOLDINGS, LLC, a limited liability company n/k/a PREMIER CARD SOLUTIONS, LLC, a limited liability company;<br><br>Plaintiff,<br><br>v.<br><br>HOUSTON CASUALTY COMPANY, a Texas corporation,<br><br>Defendant. | Civil Action No. 08-CV-2968<br><br>Judge:  Matthew F. Kennelly<br><br>Magistrate Judge: Arlander Keys<br><br>**Jury Demanded** |

## AMENDED COMPLAINT

Plaintiff Plastag Holdings, LLC n/k/a Premier Card Solutions, LLC (hereinafter "Plastag" or "Plaintiff"), by and through his undersigned attorneys, as and for its Amended Complaint against Defendant Houston Casualty Company (hereinafter "HCC"), alleges as follows:

### Nature of Action

1.      This is an insurance coverage action seeking reimbursement of defense costs and settlement amounts that Plastag has incurred in the defense of the lawsuit *Boumehdi v. Plastag Holdings, LLC*, Case No. 04 C 0672 (United States District Court for the Northern District of Illinois) (hereinafter "the *Boumehdi* Lawsuit").

### Parties

2.      Plastag is a limited liability company that has its principal place of business in Elk Grove Village, Illinois. Plastag is one of the world's largest manufacturers of plastic cards for use in a variety of applications, including magnetic key cards, gift cards, bank and ATM cards, casino cards, ID cards, trading cards, etc.

3.      Plastag is a limited liability company comprised of five (5) members, including four individuals and Valor Equity Partners, LP.

4.      Three of the individual members of Plastag reside in the State of Minnesota.

5.      The fourth individual member of Plastag resides in the State of Oklahoma.

6.      Valor Equity Partners, LP is a limited partnership organized under the laws of Delaware with its headquarters located in Illinois.  Valor Equity Partners, LP consists of sixty (60) partners who reside in the States of Illinois, Pennsylvania, Michigan, Wyoming, New York, Georgia, California, New Hampshire, Massachusetts, and Connecticut.

7.      Neither the individual members of Plastag nor the partners of member Valor Equity Partners, LP reside in the State of Texas.

8.      At all relevant times, HCC was and still is a stock insurance company incorporated in Texas that has its principal place of business in Houston, Texas. HCC was and still is engaged in the business of, among other things, underwriting directors, officers and organization liability insurance for businesses.

## Jurisdiction and Venue

9.      The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the transactions bringing rise to the cause of action herein occurred within this District, including but not limited to HCC issuing the insurance policy to Plastag in this District, the *Boumehdi* Lawsuit was filed in this District and Plastag incurred defense costs and settlement amounts within this District.

## FACTUAL ALLEGATIONS

### The MAG Policy

11.     Plastag purchased a "Directors, Officers and Organization Liability Insurance Policy" from HCC, policy number 14-MG-03-A1953 (hereinafter "The MAG"). A true and correct copy of The MAG is attached hereto as Exhibit A and incorporated herein by reference.

12.     The MAG policy covers the period from March 28, 2003 to March 28, 2004.

13.     Plastag is an "Insured" and an "Insured Organization" as those terms are defined in The MAG policy.

14.     HCC is obligated in The MAG policy to pay on behalf of Plastag "Loss" arising from "Claims" first made against Plastag during the policy period for "Wrongful Acts."

15.     The MAG policy defines "Loss" as "Defense Costs and any damages, settlements, judgments . . . or other amounts . . . that [Plastag] is legally obligated to pay as a result of any Claim. . . ."

16.     The MAg policy defines "Defense Costs" as "reasonable legal fees, costs and expenses consented to by [HCC] (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation, adjustment, defense or appeal of a Claim against [Plastag], but excluding salaries, wages, benefits or overhead expenses of any Insured Person."

17.     The MAG policy defines "Wrongful Act" in relevant part as "Employment Practices Wrongful Act," which is defined to include, *inter alia*, "Discrimination," "Sexual Harassment," "Workplace Harassment," or "Wrongful Termination."

18.     The MAG policy provides that HCC will be liable only for the amount of "Loss" in connection with any "Claim" that is in excess of the $50,000 retention. Plastag is responsible for payment of the $50,000 retention in connection with any "Claim."

19.    The MAG policy, CONDITIONS, Section (D), <u>Defense Costs, Settlements,</u>

<u>Allocation</u>, provides in pertinent part as follows:

(1)  The Insurer will have no duty under this Policy to defend any Claim. The Insureds must defend any Claim against them. The Insureds may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the Insurer's prior written consent, which consent may not be unreasonably withheld. Only those settlements, stipulated judgments and Defense Costs to which the Insurer has consented will be recoverable as Loss under the Policy. The Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.

(2)  The Insurer will pay covered Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.

(3)  If Loss covered by this Policy and loss not covered by this Policy are both incurred in connection with a single Claim, either because the Claim includes both covered and uncovered matters, or because the Claim is made both against Insureds and against others not included within the definition of Insured, the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts. . . . The Insurer will be obligated to pay only those amounts or portions of Loss allocated to covered matters claimed against Insureds. If the Insureds and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of Loss, including Defense Costs, which the parties agree is not in dispute.

### The *Boumehdi* Lawsuit

20.    On or about August 5, 2003, plaintiff Julie Boumehdi filed a Charge of

Discrimination against Plastag with the Equal Employment Opportunity Commission, alleging

that her employer Plastag had discriminated against her on the basis of her gender. A true and

correct copy Ms. Boumehdi's Charge of Discrimination is attached hereto as Exhibit B.

21.    Upon information and belief, on October 24, 2003, the EEOC issued a Dismissal

and Notice of Rights to Ms. Boumehdi concerning the Charge of Discrimination. Upon

information and belief, the EEOC sent the Dismissal and Notice of Rights to Ms. Boumehdi

again on December 19, 2003. A true and correct copy of the Dismissal and Notice of Rights is

attached hereto as Exhibit C.

22.     On January 28, 2004, Ms. Boumehdi filed a Complaint of Employment

Discrimination against Plastag in the United States District Court for the Northern District of

Illinois. A true and correct copy of the Complaint of Employment Discrimination is attached

hereto as Exhibit D.

23.     On July 14, 2004, Ms. Boumehdi filed an Amended Complaint at Law against

Plastag in the United States District Court for the Northern District of Illinois. A true and correct

copy of the Amended Complaint at Law is attached hereto as Exhibit E.

24.     Plastag notified HCC of the *Boumehdi* Lawsuit and HCC responded to that notice

on July 20, 2005. In the July 20, 2005 letter, HCC informed Plastag that it "accepts this matter

for coverage subject to the Policy's terms, conditions and limitation, including those discussed

herein." A true and correct copy of HCC's July 20, 2005 letter is attached hereto as Exhibit F.

25.     In the July 20, 2005 letter, HCC asserted that The MAG policy gave HCC the

right to approve Plastag's choice of counsel to defend the *Boumehdi* Lawsuit. As a condition to

that approval, Plastag's defense counsel had to abide by HCC's Defense Counsel Guidelines.

### HCC Assumes the Defense of the *Boumehdi* Lawsuit

26.     HCC acknowledged in its July 20, 2005 letter that the *Boumehdi* Lawsuit alleged

that Plastag was liable for "Wrongful Acts" that allegedly had occurred during the period of The

MAG policy.

27.     Notwithstanding its assertion in its July 20, 2005 letter that it did not have a duty

to defend Plastag in the *Boumehdi* Lawsuit pursuant to The MAG policy, and that Plastag was

responsible for defending itself and paying defense costs until the $50,000 retention had been

exhausted by such payments, HCC assumed control over the defense of the *Boumehdi* Lawsuit

after July 20, 2005.

28.     HCC directed Plastag's defense counsel in defending the *Boumehdi* Lawsuit and

required defense counsel to obtain HCC's approval before performing any significant action or

incurring any significant costs in that defense. HCC still required Plastag to pay defense costs

until the $50,000 retention was exhausted.

29.     HCC induced Plastag to surrender control of the defense of the *Boumehdi* Lawsuit

by HCC asserting its rights to control the defense, to approve the selection and conduct of

defense counsel, and to consent to all "Defense Costs" incurred in the defense of the *Boumehdi*

Lawsuit. Indeed, Plastag had no choice but to submit to HCC's control of the defense of the

*Boumehdi* Lawsuit. If Plastag had attempted to defend the *Boumehdi* Lawsuit without obtaining

HCC's prior written consent, as required by The MAG policy, HCC would not have been

obligated to pay for that defense and would have disclaimed coverage by asserting that Plastag

failed to cooperate with HCC in the defense and failed to allow HCC "to effectively associate in

the defense" of the *Boumehdi* Lawsuit.

30.     HCC did not inform Plastag that HCC had a conflict of interest that prevented

HCC from assuming control of the defense of the *Boumehdi* Lawsuit and gave Plastag rights to

independent counsel and to control the defense, even after the $50,000 retention had been

exhausted. This conflict of interest consisted of allegations in the *Boumehdi* Lawsuit that Ms.

Boumehdi allegedly had been discriminated against both prior to and after March 28, 2003, the

effective date of The MAG policy. The MAG policy excludes coverage for "Loss in connection

with a Claim arising out of, based upon or attributable to any Wrongful Act committed or

allegedly committed, in whole or in part, prior to 3/28/03." HCC had an incentive to steer the defense of the *Boumehdi* Lawsuit towards a finding that alleged discrimination had occurred prior to March 28, 2003, which might have resulted in some or all of Plastag's alleged liability not being insured.

31.    Plastag was prejudiced by HCC's assumption of the defense of the *Boumehdi* Lawsuit. This prejudice manifested itself in, among other ways, Plastag surrendering control of the defense, and HCC's ability to mold the defense in ways favorable to HCC and contrary to Plastag's interests, including steering the defense towards a finding that discrimination had occurred prior to March 28, 2003.

## **HCC Abandons Plastag and Denies Coverage for the *Boumehdi* Lawsuit**

32.    By March of 2006, in excess of $50,000 had been incurred in defending the *Boumehdi* Lawsuit. Plastag informed HCC of this and requested that HCC begin paying defense costs due to the exhaustion of the $50,000 retention in The MAG policy.

33.    HCC responded by asserting, for the first time, that there needed to be a determination of what alleged "Wrongful Acts" had allegedly occurred prior to March 28, 2003 and what alleged "Wrongful Acts" had allegedly occurred after March 28, 2003, and that defense costs needed to be allocated among these alleged "Wrongful Acts," such that Plastag would continue to be responsible for paying defense costs allocated to alleged "Wrongful Acts" that allegedly had occurred prior to March 28, 2003.

34.    At no time prior to March of 2006 had HCC demanded that defense costs be allocated in this way. Plastag had paid all defense costs incurred in the defense of the *Boumehdi* Lawsuit up to that point, and HCC had consented to those defense costs, without any allocation.

35.     On September 27, 2006, HCC wrote a letter to Plastag in which HCC denied coverage entirely for the *Boumehdi* Lawsuit. A true and correct copy of HCC's September 27, 2006 letter is attached hereto as Exhibit G. HCC asserted that there was no coverage for the *Boumehdi* Lawsuit because it alleged that "Wrongful Acts" had occurred prior to March 28, 2003, and that Plastag had not given HCC timely notice of Ms. Boumehdi's "Claim." HCC had not raised the timing of Plastag's notice of the *Boumehdi* Lawsuit or Claim as a defense to coverage prior to September 27, 2006.

36.     HCC never paid any defense costs incurred in the *Boumehdi* Lawsuit above the $50,000 retention in The MAG policy. HCC never attempted to allocate defense costs incurred either within or above the $50,000 retention. HCC never made any interim payments of the amount or portion of defense costs which the parties agreed was not in dispute.

37.     After HCC denied coverage for the *Boumehdi* Lawsuit on September 27, 2006, Plastag began to defend itself in that Lawsuit. Plastag incurred a total of approximately $285,000 to defend itself against the *Boumehdi* Lawsuit.

38.     In October of 2007, Plastag wanted to attempt to settle the *Boumehdi* Lawsuit. Plastag wrote to HCC and requested that it participate in the settlement negotiations. On October 12, 2007, HCC wrote a letter to Plastag in which HCC reaffirmed its denial of coverage and refused to participate in the settlement negotiations. A true and correct copy of HCC's October 12, 2007 letter is attached hereto as Exhibit H.

39.     On December 11, 2007, Plastag settled the *Boumehdi* Lawsuit with a payment of $285,000 to Ms. Boumehdi. A true and correct copy of the December 11, 2007 settlement agreement is attached hereto as Exhibit I.

**COUNT ONE**
**<u>Breach of Contract</u>**

40.    Plastag hereby incorporates by reference paragraphs 1 through 39 as if fully set forth herein this Count I.

41.    Plastag has paid all premiums called for in The MAG policy.

42.    Plastag has fully and timely complied with all of the conditions precedent to coverage provided in The MAG policy. In the alternative, HCC has waived compliance with all conditions precedent and/or is estopped from asserting or relying on the conditions precedent in The MAG policy.

43.    As alleged above, Plastag is an "Insured" and an "Insured Organization" under The MAG policy.

44.    As alleged above, HCC agreed under the terms and conditions of The MAG policy to pay on behalf of Plastag "Loss" arising from "Claims" first made against Plastag during the policy period for "Wrongful Acts."

45.    As alleged above, HCC agreed under the terms and conditions of The MAG policy to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention in a lawsuit alleging "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

46.    The *Boumehdi* Lawsuit was a "Claim" first made against Plastag during the policy period that alleged "Wrongful Acts," such that HCC was obligated to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention under the terms and conditions of The MAG policy.

47.     HCC admitted that it had an obligation to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention for the *Boumehdi* Lawsuit because the Lawsuit alleged "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts" that was at least potentially covered under The MAG policy.

48.     As alleged above, HCC agreed under the terms and conditions of The MAG policy to pay "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

49.     The settlement of the *Boumehdi* Lawsuit is a "Loss," such that HCC is obligated to reimburse Plastag for the settlement amount under the terms and conditions of The MAG policy.

50.     HCC committed substantial and material breaches of its contractual obligations under The MAG policy by wrongfully denying Plastag full coverage under the terms of The MAG policy, including failing to pay and/or reimburse Plastag all reasonable defense costs above the $50,000 retention as they were incurred in the defense of the *Boumehdi* Lawsuit and assuming control over the defense of the *Boumehdi* Lawsuit.

51.     Plastag has suffered, and continues to suffer, as a direct and proximate result of HCC's contractual breaches of The MAG policy substantial monetary damages totaling in excess of $520,000, exclusive of interest and costs associated with this lawsuit.

WHEREFORE, Plaintiff Plastag Holdings, LLC n/k/a Premier Card Solutions, LLC prays for judgment in its favor against Houston Casualty Company, a Texas corporation, for damages in excess of $520,000 plus interest, costs of this suit, and such other relief that this Court deems just and equitable.

## COUNT TWO
## <u>Declaratory Judgment</u>

52.     Plastag hereby incorporates by reference paragraphs 1 through 51 as if fully set forth herein this Count II.

53.     HCC agreed under the terms and conditions of The MAG policy to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention in a lawsuit alleging "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

54.     HCC agreed under the terms and conditions of The MAG policy to pay "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

55.     HCC has failed to fulfill or acknowledge its obligation to pay or reimburse Plastag for defense costs as they were incurred and settlement amounts in the *Boumehdi* Lawsuit as required under the terms of The MAG policy.

56.     An actual and justiciable controversy presently exists between Plastag and HCC concerning HCC's obligation to pay or reimburse Plastag for the defense costs as they were incurred and settlement amounts above $50,000 in the *Boumehdi* Lawsuit, which total in excess of $520,000, pursuant to the terms of The MAG policy.

57.     HCC has failed to acknowledge that Plastag had the right to control the defense of the *Boumehdi* Lawsuit based on the conflict of interest between HCC and Plastag.

58.     An actual and justiciable controversy presently exists between Plastag and HCC concerning HCC's right to control the defense of the *Boumehdi* Lawsuit.

WHEREFORE, Plaintiff Plastag Holdings LLC n/k/a Premier Card Solutions, LLC prays that this Court determine and declare that Houston Casualty Company is obligated to pay or reimburse Plastag's defense costs and settlement amounts above $50,000 in the *Boumehdi*

Lawsuit, which total in excess of $520,000, and that Houston Casualty Company was not entitled to control the defense of the *Boumehdi* Lawsuit, plus interest and costs of this suit.

## COUNT THREE
### Estoppel

59.    Plastag hereby incorporates by reference paragraphs 1 through 58 as if fully set forth herein this Count III.

60.    HCC had a duty to pay and/or reimburse Plastag for "Defense Costs" on an "as-incurred basis" incurred above the $50,000 retention in The MAG policy in the defense of the *Boumehdi* Lawsuit.

61.    HCC admitted that it had an obligation to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention for the *Boumehdi* Lawsuit because the Lawsuit alleged "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts" that was at least potentially covered under The MAG policy.

62.    HCC committed substantial and material breaches of its contractual obligations under The MAG policy by wrongfully failing to pay and/or reimburse Plastag for "Defense Costs" incurred in the defense of the *Boumehdi* Lawsuit above the $50,000 retention.

63.    After denying coverage for the *Boumehdi* Lawsuit on September 27, 2006, HCC did not pay and/or reimburse Plastag for "Defense Costs" incurred in the defense of the *Boumehdi* Lawsuit above the $50,000 retention under a reservation of rights.

64.    After denying coverage for the *Boumehdi* Lawsuit on September 27, 2006, HCC did not file a declaratory judgment action seeking a declaration that it had no obligation to pay and/or reimburse Plastag for "Defense Costs" or "Loss" in connection with the *Boumehdi* Lawsuit prior to the settlement of the Lawsuit on December 11, 2007.

65.    Consequently, HCC is estopped from asserting any defenses to coverage for the "Defense Costs" and settlement amounts Plastag paid in the *Boumehdi* Lawsuit, including but not limited to the defenses that the Lawsuit alleged that "Wrongful Acts" allegedly occurred prior to March 28, 2003 and that Plastag did not give timely notice of the Claim.

66.    Furthermore, The MAG policy, reading all of its provisions together, purports to give HCC the right to control all aspects of the defense of lawsuits filed against Plastag. Concomitant with its right to control the defense of lawsuits, HCC had a duty to protect Plastag's interests in exercising that right and thus had a duty to defend Plastag in the *Boumehdi* Lawsuit.

67.    HCC breached its duties to protect Plastag's interests and to defend Plastag in the *Boumehdi* Lawsuit when it abandoned Plastag and denied coverage for the Lawsuit on September 27, 2006.

68.    Consequently, HCC is estopped from asserting any defenses to coverage for the "Defense Costs" and settlement amounts Plastag paid in the *Boumehdi* Lawsuit, including but not limited to the defenses that the Lawsuit alleged that "Wrongful Acts" allegedly occurred prior to March 28, 2003 and that Plastag did not give timely notice of the Claim.

69.    In addition, HCC was prohibited from assuming the defense of the *Boumehdi* Lawsuit by the existence of the conflict of interest that arose because the *Boumehdi* Lawsuit alleged that "Wrongful Acts" occurred both before and after March 28, 2003. HCC failed to inform Plastag of this conflict of interest, and assumed control of the defense of the *Boumehdi* Lawsuit notwithstanding the conflict of interest. As a result, Plastag was prejudiced by HCC's assumption of the defense.

70.    Consequently, HCC is estopped from asserting any defenses to coverage for the "Defense Costs" and settlement amounts Plastag paid in the *Boumehdi* Lawsuit, including but

not limited to the defenses that the Lawsuit alleged that "Wrongful Acts" allegedly occurred prior to March 28, 2003 and that Plastag did not give timely notice of the Claim.

WHEREFORE, Plaintiff Plastag Holdings LLC n/k/a Premier Card Solutions, LLC prays that this Court determine and declare that Houston Casualty Company is obligated to pay or reimburse Plastag's defense costs and settlement amounts above $50,000 in the *Boumehdi* Lawsuit, which total in excess of $520,000.

## COUNT FOUR
### Waiver

71.     Plastag hereby incorporates by reference paragraphs 1 through 70 as if fully set forth herein this Count IV.

72.     No later than July 20, 2005, HCC was aware of all relevant facts that HCC contended supported its assertion that Plastag had not given timely notice of the *Boumehdi* Claim.

73.     HCC did not deny coverage based on the assertion that Plastag had not given timely notice of the *Boumehdi* Claim until September 27, 2006, over 14 months later.

74.     Consequently, HCC knowingly waived the defense to coverage that Plastag had not given timely notice of the *Boumehdi* Claim and cannot assert this defense as a basis to deny coverage for the *Boumehdi* Lawsuit.

WHEREFORE, Plaintiff Plastag Holdings LLC n/k/a Premier Card Solutions, LLC prays that this Court determine and declare that Houston Casualty Company is obligated to pay or reimburse Plastag's defense costs and settlement amounts above $50,000 in the *Boumehdi* Lawsuit, which total in excess of $520,000.

## COUNT FIVE
## Illinois Insurance Code Section 155

75.     Plastag hereby incorporates by reference paragraphs 1 through 74 as if fully set forth herein this Count V.

76.     Based on the foregoing, HCC vexatiously and unreasonably delayed and denied payment of Plastag's defense costs and settlement amounts above $50,000 in the *Boumehdi* Lawsuit.

77.     Pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, Plastag is entitled to recover as part of the taxable costs in this action its reasonable attorneys' fees and costs incurred in bringing this action, plus an amount not to exceed any one of the following amounts:  (a) 60% of the amount which the court or jury finds Plastag is entitled to recover against HCC, exclusive of costs; (b) $60,000; or (c) the excess of the amount which the court or jury finds Plastag is entitled to recover, exclusive of costs, over the amount, if any, which HCC offered to pay in settlement of the claim prior to this action.

WHEREFORE, Plaintiff Plastag Holdings LLC n/k/a Premier Card Solutions, LLC prays that this Court determine and declare that Houston Casualty Company is obligated to pay to Plastag its reasonable attorneys' fees and costs incurred in bringing this action, plus an amount not to exceed any one of the following amounts:  (a) 60% of the amount which the court or jury finds Plastag is entitled to recover against HCC, exclusive of costs; (b) $60,000; or (c) the excess of the amount which the court or jury finds Plastag is entitled to recover, exclusive of costs, over the amount, if any, which HCC offered to pay in settlement of the claim prior to this action.

Date:  June 9, 2008                    Respectfully submitted,


              /s/ Paul Walker-Bright         
Paul R. Walker-Bright, Esq. (6226315)
Evan T. Knott, Esq. (6277800)
REED SMITH LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Telephone:  (312) 207-1000
Fax:  (312) 207-6400
pwalker-bright@reedsmith.com
eknott@reedsmith.com

Attorneys for Plaintiff Plastag Holdings LLC n/k/a
Premier Card Solutions, LLC

# EXHIBIT A

# HOUSTON CASUALTY COMPANY
## Houston, Texas

NOTICE: THIS IS A CLAIMS MADE POLICY WHICH APPLIES ONLY TO CLAIMS FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD OR, IF APPLICABLE, THE DISCOVERY PERIOD. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED, AND MAY BE EXHAUSTED, BY THE PAYMENT OF DEFENSE COSTS. DEFENSE COSTS WILL BE APPLIED AGAINST THE RETENTION. THE INSURER HAS NO DUTY UNDER THE POLICY TO DEFEND ANY INSURED.

## DECLARATIONS

### DIRECTORS, OFFICERS AND ORGANIZATION LIABILITY INSURANCE POLICY

POLICY NUMBER: 14-MG-03-A1953                    RENEWAL OF: N/A

ITEM 1.    **NAMED ORGANIZATION:**    Plastag Holdings, LLC
                                                        1800 Greenleaf
                                                        Elk Grove Village, IL 60007

ITEM 2.    **POLICY PERIOD:**
            (a)  Inception Date: 3/28/2003
            (b)  Expiration Date: 3/28/2004
            at 12:01 a.m. at the Principal Address stated in Item 1.

ITEM 3.    **LIMIT OF LIABILITY** (inclusive of **Defense Costs**):
            $3,000,000 maximum aggregate limit of liability for all Insuring Agreements combined.

ITEM 4.    **RETENTIONS:** $50,000
            (Provided, the retention is $0, per **Claim**, for **Loss** under INSURING AGREEMENT A as to which indemnification by the **Insured Organization** is not legally permissible.)

ITEM 5.    **PREMIUM:** $28,000.00

ITEM 6.    **DISCOVERY PERIOD:**
            One or two years after the end of the **Policy Period**, at the election of the **Named Organization**.

ITEM 7.    **ADDITIONAL PREMIUM FOR DISCOVERY PERIOD:**
            (a) one-year Discovery Period: $28,000        (b) two-year Discovery Period: $56,000

ITEM 8.    **NOTICES REQUIRED TO BE GIVEN TO THE INSURER MUST BE ADDRESSED TO:**
            HCC GLOBAL FINANCIAL PRODUCTS
            P.O. Box 4018
            Farmington, CT 06034
            Attention: Claims Manager

ITEM 9.    **ENDORSEMENTS ATTACHED AT ISSUANCE:**
            1055-411  1055-416  1055-431  1055-807  1055-836  1055-846  80006  80016

**IN WITNESS WHEREOF, the Insurer has caused this Policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.**

Secretary                    President                    Authorized Representative

Date: June 12, 2003                                                    HC 1056 (04/2002)

ENDORSEMENT NUMBER: 1

## ERRORS AND OMISSIONS EXCLUSION
## (WITH MANAGEMENT CARVEBACK)

To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

In consideration of the premium charged:

(1)     No coverage will be available under this Policy for Loss, including **Defense Costs**, from **Claims** for any actual or alleged act, error, omission, misstatement, misleading statement or breach of duty in connection with the rendering of, or actual or alleged failure to render, any services for others for a fee or commission or on any other compensated basis by any person or entity otherwise entitled to coverage under this Policy.

(2)     Paragraph (1) is not intended, however, nor shall it be construed, to apply to **Loss**, including **Defense Costs**, in connection with any **Claim** against an **Insured Person** who is a director or officer of the **Insured Organization** to the extent that such **Claim** is for a **Wrongful Act** by such **Insured Person** who is a director or officer of the **Insured Organization** in connection with the management or supervision of any division, **Subsidiary** or group of the **Insured Organization** offering any of the aforementioned services.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete Only When This Endorsement Is Not Prepared With The Policy Or Is Not To Be Effective With The Policy.

Effective Date of this endorsement:

By:   _____
                    Attorney-in-Fact

1055-411
Ed 12/99

ENDORSEMENT NUMBER:  2

**PRIOR ACTS EXCLUSION (BROAD FORM)**

To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

In consideration of the premium charged, it is agreed that the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed, in whole or in part, prior to 3/28/03.


All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:


By: _____
                    Attorney-in-Fact


1055-416
Ed (08/00)

Page 1 of 1

ENDORSEMENT NUMBER: 3

## PRODUCT LIABILITY EXCLUSION
## WITH A-SIDE AND SECURITIES CLAIM CARVEBACKS

To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

In consideration of the premium charged, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** based upon, arising out of, directly or indirectly resulting from, in consequence of or in any way involving any actual or alleged malfunction of any product or failure of any product to perform in any manner as a result of any defect, deficiency or inadequacy in the design or manufacture or such product; provided, that this exclusion shall not apply to:

(1) **Loss** under INSURING AGREEMENT (A); or

(2) any **Claim** brought by a security holder of the **Insured Organization** in his or her capacity as such.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete Only When This Endorsement Is Not Prepared With The Policy Or Is Not To Be Effective With The Policy.

Effective Date of this endorsement:

By: _____
                    Attorney-in-Fact

1055-431                    Page 1 of 1
Ed (10/00)

ENDORSEMENT NUMBER:  4

## SERVICE OF SUIT ENDORSEMENT

To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

In consideration of the premium charged it is hereby agreed and understood that pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereby designates the Commissioner Superintendent, or Director of Insurance or other officer specified for that purpose in the statute, and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in any Court of competent jurisdiction by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates The Claims Manager, HCC Global Financial Products, L.L.C., P.O. Box 4018, Farmington, CT 06034, as the entity to whom said officer is authorized to mail such process or a true copy thereof.

All other terms, conditions and limitations of this Policy will remain unchanged, including but not limited to the maximum aggregate **Limit of Liability** set forth in ITEM 3. of the Declarations.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By:  _____
            Attorney-in-Fact

1055-807
Ed (01/00)

ENDORSEMENT NUMBER: 5

## CO-DEFENDANT VICARIOUS LIABILITY EXTENSION

To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

In consideration of the premium charged:

(1)     The entities listed below shall be included within the definition of **"Insured Organization"** if, and only for so long as, any such **Claim** is also made and maintained against at least one other **Insured**:

(2)     The definition of **"Insured Person"** shall not, however, include any past, present or future director, officer, managing member, manager or employee of any entity listed in paragraph (1) above.  There shall be no coverage under this Policy for any actual or alleged **Wrongful Act** committed by any entity listed in paragraph (1) above or any past, present or future director, officer, managing member, manager or employee thereof.  The coverage afforded under this endorsement to any entity listed in paragraph (1) above shall be limited to **Loss** of such entity resulting from **Claims** based on the vicarious liability of such entity for actual or alleged **Wrongful Acts** committed by other **Insureds**.

(3)     The coverage afforded under this endorsement will apply only as excess over and will not contribute with any other valid and collectible insurance available to any entity listed in paragraph (1) above.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
              Attorney-in-Fact

1055-836                                      Page 1 of 1
Ed (07/01)

ENDORSEMENT NUMBER: 6

## FIDUCIARY LIABILITY COVERAGE
### (OMNIBUS PLANS AND SEPARATE LIMIT)

To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

In consideration of the premium charged:

(1)     The following INSURING AGREEMENT is added to the Policy:

The Insurer will pay to or on behalf of the **Insureds Loss** arising from **Claims** first made against them during the **Policy Period** or Discovery Period (if applicable) for **Fiduciary Responsibility Wrongful Acts**.

(2)     Solely for purposes of the coverage provided under this endorsement:

(A)     DEFINITION (G) **Insured** is deleted in its entirety and replaced with the following:

(G)     **Insured** means:

(1)     the **Insured Organization**;
(2)     an **Employee Benefit Plan**;
(3)     any natural person, including any **Insured Person**, who was, is or becomes a trustee of an **Employee Benefit Plan** while acting in the capacity as a fiduciary;
(4)     any **Employee Benefit Plan** created or acquired by the **Insured Organization** subsequent to the effective date of this endorsement but only for **Claims** for **Fiduciary Responsibility Wrongful Acts** committed on or after the effective date of such creation or acquisition, provided (i) written notice thereof be given to the Insurer within ninety (90) days of such creation or acquisition, and (ii) the Insurer has agreed to provide such coverage subject to any additional terms and conditions and payment of any additional premium as may be required by the Insurer.

(B)     DEFINITION (U) **Wrongful Act** is deleted in its entirety and replaced with the following:

(U)  **Wrongful Act** means a **Fiduciary Responsibility Wrongful Act**.

1055-846
Ed (01/02)                        Page 1 of 4

(C)   Notwithstanding anything in this Policy to the contrary, DEFINITION (J) **Loss** shall include civil penalties under Sections 502(i) and 502(l) of the Employee Retirement Income Security Act of 1974 ("ERISA").

(D)   The following DEFINITIONS are added to the Policy:

**Administration** means any of the following, in connection with **Employee Benefits**:

(1)   giving counsel or advice;
(2)   interpreting;
(3)   handling records; or
(4)   effecting enrollment, cancellation or termination.

**Employee Benefit Plan** means any "employee benefit plan," as defined in ERISA or in any similar state, local or foreign law or regulation, which was, is now, or becomes sponsored solely by the **Insured Organization** or jointly by the **Insured Organization** and a labor organization exclusively for the benefit of employees of the **Insured Organization**;

**Employee Benefits** means benefits provided under an **Employee Benefit Plan** or under workers' compensation insurance, unemployment insurance, disability insurance, Social Security or COBRA.

**Fiduciary Responsibility Wrongful Act** means:

(1)   breach of the duties, obligations and responsibilities imposed by ERISA or by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), or by any similar state, local or foreign law or regulation, by an **Insured** in the discharge of his, her or its duties as respects an **Employee Benefit Plan**;

(2)   any other matter claimed against an **Insured** solely because of the **Insured's** status as a fiduciary of an **Employee Benefit Plan**; or

(3)   any negligent act, error or omission by an **Insured** in the **Administration** of **Employee Benefits**.

(E)   EXCLUSIONS (E), (F), (J), (L) and (P) are deleted.

(F)   The Insurer will not be liable to make any payment of **Loss**, other than **Defense Costs**, in connection with a **Claim**:

(a)   for benefits which are or may become due under an **Employee Benefit Plan** if such benefits are paid or may lawfully be paid from the funds such **Employee Benefit Plan**, unless and to the

1055-846                          Page 2 of 4
Ed (01/02)

extent that such sums are payable as a personal obligation of a natural person **Insured** because of his or her **Fiduciary Responsibility Wrongful Act**; or

(b)  arising out of the failure to comply with any law concerning workers' compensation insurance, unemployment insurance, disability insurance, or Social Security, other than COBRA.

(G)  The Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:

(a)  involving any **Employee Benefit Plan** that was sold, spun-off, merged or terminated, except for any **Fiduciary Responsibility Wrongful Act** committed or allegedly committed prior to the date of such sale, spin-off, merger or termination;

(b)  arising out of, based upon or attributable to any **Fiduciary Responsibility Wrongful Act** as respects an **Employee Benefit Plan** if such **Fiduciary Responsibility Wrongful Act** occurred at any time when such **Employee Benefit Plan** was not sponsored solely by the **Insured Organization** or jointly by the **Insured Organization** and a labor organization exclusively for the benefit of employees of the **Insured Organization**;

(c)  arising out of, based upon or attributable to the liability of others assumed by an **Insured** under any contract or agreement, whether oral or written, other than an **Employee Benefit Plan**, except in accordance with the agreement or declaration of trust pursuant to which the **Employee Benefit Plan** was established.

(H)  The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed $1,000,000 ("the Fiduciary Liability Limit"). The Fiduciary Liability Limit shall be separate from and in addition to the Limit of Liability set forth in ITEM 3 of the Declarations, and ITEM 3 of the Declarations is amended accordingly.

(I)  A retention of $0 shall apply to **Loss** resulting from each **Claim**; provided, such retention shall not apply to **Loss** incurred by any natural person **Insured** if indemnification of such **Loss** by the **Insured Organization** is not legally permitted or cannot be done solely by reason of its financial insolvency.

All other terms, conditions and limitations of this Policy will remain unchanged.

1055-846                         Page 3 of 4
Ed (01/02)

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

By: _____
　　　　　　Attorney-in-Fact

ENDORSEMENT NUMBER: 7

## SPECIFIC CLAIMANT EXCLUSION

      To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

In consideration of the premium charged, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim** brought by or on behalf of, or in the name or right of, Valor Equity Partners, LLC.

All other terms, conditions and limitations of this Policy will remain unchanged.

Complete the following only when this endorsement is not prepared with the policy or is not to be effective with the policy.

Effective Date of this endorsement:

                                     By: _____
                                               Attorney-in-Fact

ENDORSEMENT NUMBER: 8

**POLICYHOLDER DISCLOSURE – TERRORISM PREMIUM NOTICE**

To be attached to and made a part of Policy No. 14-MG-03-A1953, issued to Plastag Holdings, LLC by Houston Casualty Company.

Your policy contains coverage for certain losses caused by terrorism. We are required to notify you of the portion of the premium, if any, attributable to the coverage for terrorist acts certified under the Terrorism Risk Insurance Act of 2002. The Act also requires us to provide disclosure of Federal participation in payment of terrorism losses. For a further description of an act of terrorism as provided under the Act, see below.

You should know that effective November 26, 2002 any losses caused by certified acts of terrorism would be partially reimbursed by the United States government, Department of Treasury, under a formula established by federal law. Under this formula, the United States pays 90% of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage. The premium charged for this coverage is shown below; it does not include any charges for the portion of loss covered by the federal government under the Act.

The portion of your premium that is attributable to coverage for terrorist acts certified under the Act is $560.00.

The following excerpt from the Act is provided for your information:

According to Section 102(1) of the Terrorism Risk Insurance Act of 2002: "The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States —- (1) to be an act of terrorism; (ii) to be a violent act or an act that is dangerous to (I) human life; (II) property; or (III) infrastructure; (iii) to have resulted in damage within the United States, or premises of a United States mission; and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion." Section 102(1)(B) states: "No act shall be certified by the Secretary as an act of terrorism if (i) the act is committed as part of the course of war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000." Section 102(C) and (D) specify that the determination are final and not subject to judicial review and that the Secretary of the Treasury cannot delegate the determination to anyone.

80016
Ed (04/03)

Page 1 of 1

# HOUSTON CASUALTY COMPANY

# **THE MAG**

## Directors, Officers and Organization Liability Insurance Policy



**HCC Global Financial Products**

8 Forest Park Drive
P.O. Box 4018
Farmington, CT 06034

# HOUSTON CASUALTY COMPANY

## THE MAG
### DIRECTORS, OFFICERS AND PRIVATE ORGANIZATION LIABILITY INSURANCE POLICY

### This is a claims made policy. Please read it carefully.

In consideration of the payment of the premium, and in reliance upon the statements made in the **Application**, including attachments, all of which are made a part hereof and deemed attached hereto, and subject to the Declarations and the limitations, conditions, provisions, any endorsements to and all other terms of this policy, the Insurer and the **Insureds** agree as follows:

INSURING AGREEMENTS

(A)    The Insurer will pay to or on behalf of the **Insured Persons Loss** arising from **Claims** first made against them during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts.**

(B)    The Insurer will pay to or on behalf of the **Insured Organization Loss** arising from **Claims** first made against it during the **Policy Period** or Discovery Period (if applicable) for **Wrongful Acts.**

DEFINITIONS

(A)    **Application** means the application attached to and forming part of this Policy, including any materials submitted in connection with such application, all of which are deemed a part of the Policy.

(B)    **Claim** means:

    (1)    any written demand, oral demand or demands for non-monetary relief

    (2)    any civil proceeding commenced by service of a complaint or similar pleading,

    (3)    any arbitration, mediation or other similar dispute resolution proceeding, or

    (4)    any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

HOUSTON CASUALTY COMPANY

provided, that any such demand or proceeding will be a **Claim** only if and to the extent that it seeks monetary relief. **Claim** also means any criminal proceeding commenced by the return of an indictment, and any appeal from any proceeding referred to in this DEFINITION (B).

(C)    **Defense Costs** means reasonable legal fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation, adjustment, defense or appeal of a **Claim** against an **Insured**, but excluding salaries, wages, benefits or overhead expenses of any **Insured Person**.

(D)    **Discrimination** means:

(1)    any failure or refusal to hire, failure or refusal to promote, demotion or discharge of, or wrongful failure to grant tenure to, any person, or

(2)    any limitation, segregation or classification of any **Employee** or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise adversely affect his or her status as an **Employee**;

because of such person's race, color, age, sex, disability, pregnancy, sexual orientation or preference, national origin, religion, or other status that is protected pursuant to any applicable federal, state or local statute or ordinance.

(E)    **Employee** means any individual whom the **Insured Organization** compensates by salary, wages and/or commissions and whose labor or service is engaged by and directed by the **Insured Organization**, including seasonal, volunteer and part-time employees.

(F)    **Employment Practices Wrongful Act** means any actual or alleged:

(1)    **Discrimination,**

(2)    **Retaliation,**

(3)    **Sexual Harassment,**

(4)    **Workplace Harassment,**

(5)    **Workplace Tort,** or

(6)    **Wrongful Termination**.

(G)    **Insured** means the **Insured Persons** and the **Insured Organization**.

HOUSTON CASUALTY COMPANY

(H)    **Insured Organization** means the **Named Organization** and any **Subsidiary** thereof.

(I)    **Insured Person** means any past, present or future director, officer, managing member, manager or **Employee** of the **Insured Organization**, including any person in a position which is the functional equivalent thereof with respect to any entity included within the definition of **Insured Organization** located outside the United States.

(J)    **Loss** means **Defense Costs** and any damages, settlements, judgments, back pay awards and front pay awards or other amounts (including punitive or exemplary damages and the multiplied portion of any multiplied damage award, if and where insurable by law) that an **Insured** is legally obligated to pay as a result of any **Claim**; provided, that **Loss** will not include wages, fines, taxes or penalties or matters which are uninsurable under the law pursuant to which this Policy is construed. For purposes of determining whether punitive or exemplary damages or the multiplied portion of any multiplied damage award arising from any **Claim** shall be insurable by law, the Insurer agrees to abide by the law of whichever jurisdiction is applicable to such **Claim** and is most favorable to the **Insureds** in that regard.

(K)    **Named Organization** means the entity designated as such in Item 1 of the Declarations.

(L)    **Outside Capacity** means service by an **Insured Person** as a director, officer, member, manager or trustee of, or in another equivalent executive position with respect to, an **Outside Entity**, during such time that such service is at the request of the **Insured Organization**.

(M)    **Outside Entity** means any corporation or organization other than the **Insured Organization** which is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code of 1986, as the same may be amended from time to time.

(N)    **Policy Period** means the period set forth in Item 2 of the Declarations, subject to prior termination or cancellation pursuant to CONDITION (E).

(O)    **Pollutants** means any seepage, pollution or contamination, including but not limited to any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, and materials to be recycled, reconditioned or reclaimed.

(P)    **Retaliation** means retaliatory treatment against an **Employee** of the **Insured Organization** on account of such **Employee's** exercise or attempted exercise of his or her rights under law.

HOUSTON CASUALTY COMPANY

(Q)    **Sexual Harassment** means unwelcome sexual advances, requests for sexual favors, or other verbal, visual or physical conduct of a sexual nature that is made a condition of employment with the **Insured Organization**, is used as a basis for employment decisions by the **Insured Organization**, creates a work environment with the **Insured Organization** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

(R)    **Subsidiary** means any entity:

    (1)    during any time on or before the inception of the **Policy Period** in which the **Named Organization** has or controls, either directly or indirectly through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers; or

    (2)    subject to CONDITION (F)(3), created or acquired during the **Policy Period** during any time in which, as a result of such creation or acquisition, the **Named Organization** has or controls, either directly or indirectly through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers.

An entity ceases to be a **Subsidiary** when the **Named Organization** no longer has or controls, either directly or indirectly through one or more **Subsidiaries**, the right to elect, appoint or designate more than fifty percent (50%) of such entity's directors or managers. The coverage afforded under this Policy with respect to **Claims** against a **Subsidiary** or any **Insured Person** thereof will apply only in respect of **Wrongful Acts** committed or allegedly committed after the effective time that such entity becomes a **Subsidiary** and prior to the time that such entity ceases to be a **Subsidiary**.

(S)    **Workplace Harassment** means conduct which creates a work environment with the **Insured Organization** that interferes with performance, or creates an intimidating, hostile or offensive working environment.

(T)    **Workplace Tort** means misrepresentation, defamation (including libel and slander), invasion of privacy, false imprisonment, negligent evaluation, negligent training or supervision, wrongful discipline or wrongful deprivation of career opportunity, if actually or allegedly related to the claimant's employment by the **Insured Organization**.

(U)    **Wrongful Act** means:

    (1)    any **Employment Practices Wrongful Act** (a) by the **Insured Organization**, or (b) by an **Insured Person** in his or her capacity as a

HOUSTON CASUALTY COMPANY

director, officer, member, manager or **Employee** of the **Insured Organization**;

(2) any other actual or alleged act, error, misstatement, misleading statement, omission or breach of duty (a) by the **Insured Organization**, or (b) by an **Insured Person** in his or her capacity as a director, officer, member, manager or **Employee** of the **Insured Organization** or in an **Outside Capacity**; or

(3) any matter claimed against an **Insured Person** solely by reason of his or her service (a) as a director, officer, member, manager or **Employee** of the **Insured Organization**, or (b) in an **Outside Capacity**.

(V) **Wrongful Termination** means actual or constructive termination of the employment of, or demotion of, or failure or refusal to promote, any **Employee**, which is in violation of law, against public policy or in breach of an implied agreement to continue employment.

## EXCLUSIONS

Unless otherwise specifically stated or provided for in CONDITION (D)(2) or elsewhere in this Policy, the Insurer will not be liable to make any payment of **Loss** in connection with a **Claim**:

(A) arising out of, based upon or attributable to the gaining by any **Insured** of any profit or advantage to which such **Insured** was not legally entitled; provided, that this EXCLUSION (A) will apply to an **Insured** only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** gained such a profit or advantage;

(B) arising out of, based upon or attributable to the commission by any **Insured** of any criminal or deliberately fraudulent or dishonest act; provided, that this EXCLUSION (B) will apply to an **Insured** only if there has been a final adjudication adverse to such **Insured** establishing that the **Insured** so acted;

(C) for any actual or alleged:

(1) bodily injury, sickness, disease or death of any person or damage to or destruction of any tangible property, including the loss of use thereof; or

(2) mental anguish, emotional distress, libel, slander, defamation or disparagement or violation of a person's right of privacy; provided, that this EXCLUSION (C)(2) will not apply to any **Claim** for an **Employment Practices Wrongful Act**;

HOUSTON CASUALTY COMPANY

(D)     for the actual, alleged or threatened discharge, dispersal, release or escape of **Pollutants** or any direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**;

(E)     for any actual or alleged violation of the Employee Retirement Income Security Act of 1974 or any regulations promulgated thereunder or of any similar law or regulations or any other actual or alleged **Wrongful Act** in the administration of employee benefits;

(F)     brought by or on behalf of, or in the name or right of, the **Insured Organization**, whether directly or derivatively, or any **Insured Person**, unless such **Claim** is:

     (1)     brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Insured Organization** or any **Insured Person**,

     (2)     brought or maintained by an **Insured Person** for contribution or indemnity and directly results from another **Claim** covered under this Policy, or

     (3)     for an actual or alleged **Employment Practices Wrongful Act**;

(G)     by or on behalf of, or in the name or right of, any **Outside Entity**, whether directly or derivatively, against an **Insured Person** for a **Wrongful Act** in his or her **Outside Capacity** with respect to such **Outside Entity**, unless such **Claim** is brought and maintained independently of, and without the solicitation, assistance or active participation of, the **Outside Entity**, the **Insured Organization** or any **Insured Person**;

(H)     arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related **Wrongful Acts** alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time;

(I)     arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation;

(J)     as a result of any portion of a **Claim** seeking relief or redress in any form other than money damages; or

(K)     brought about or contributed to by any willful violation of any law, statute, rule or regulation by any **Insured**; provided, that this EXCLUSION (K) will not apply to any **Claim** for an **Employment Practices Wrongful Act**;

HOUSTON CASUALTY COMPANY

(L)   for any actual or alleged violation of any provision of the Fair Labor Standards Act other than the Equal Pay Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, any workers' compensation, unemployment insurance, social security or disability benefits law or any amendments thereto, or any other similar provisions of any federal, state or local statutory or common law or any rules and regulations promulgated under any of the foregoing; provided, that this EXCLUSION (L) shall not apply to any **Claim** for any actual or alleged **Retaliation**;

(M)   for the actual, alleged or threatened discharge, dispersal, release or escape of nuclear reaction, nuclear radiation, radioactive contamination or any radioactive substance;

(N)   for any actual or alleged violation of the Securities Act of 1933, the Securities Exchange Act of 1934, any state "blue sky" law, any rule or regulation promulgated under any of the foregoing, or any other provision of federal, state or common law imposing liability in connection with the registration, offer, sale or purchase of securities; provided, that this EXCLUSION (N) shall not apply to any **Claim** arising out of the offering, sale or purchase of securities, whether debt or equity, in a transaction that is exempt from registration under the Securities Act of 1933; and provided, further, that if at least thirty (30) days prior to any initial public offering of stock of the **Named Organization** or any **Subsidiary** or any purchase or sale, or any offer to purchase or sell, any debt securities of the **Named Organization** or any **Subsidiary**, the **Insured Organization** gives the Insurer written notice thereof together with any information with respect thereto as the Insurer may request, the Insurer will offer a proposal to provide coverage with respect to such event, subject to such additional terms, conditions and limitations of coverage and such additional premium as the Insurer may require;

(O)   for any actual or alleged:

   (1)   infringement of any patent, copyright or trademark, or

   (2)   unauthorized taking or use of any trade name, service mark, service name, mask work, title, slogan, trade secret, know-how or confidential or proprietary business information or other material or information in violation of any right under any patent, copyright or trademark registration, license, lease, franchise, permit, authorization or agreement (including secrecy and non-disclosure agreements);

   including any actual or alleged violation of any law, statute, rule or regulation or any provision of the common law imposing liability in connection therewith;

HOUSTON CASUALTY COMPANY

provided, that this EXCLUSION (O) will apply only to **Claims** against the **Insured Organization**; or

(P)     arising out of any actual or alleged breach of contract or agreement; provided, that this EXCLUSION (P) will not apply to otherwise covered **Defense Costs** incurred in connection with any such **Claim** and provided, further, that this EXCLUSION (P) will not apply to any **Claim** for an **Employment Practices Wrongful Act**.

No conduct of any **Insured** will be imputed to any other **Insured** to determine the application of any of the above EXCLUSIONS.

DISCOVERY PERIOD

If the Insurer or the **Named Organization** fails or refuses to renew this Policy or if the **Named Organization** cancels this Policy, any **Insured** will have the right, upon payment of the respective Discovery Period Premium set forth in Item 7 of the Declarations, to an extension of the coverage granted by this Policy for the period set forth in Item 6 of the Declarations following the effective date of such cancellation or non-renewal (the "Discovery Period"), but only with respect to any **Wrongful Act** actually or allegedly taking place before the date of such cancellation or non-renewal. A written request for this extension, together with payment of the Discovery Period Premium, must be made within thirty (30) days after the effective date of cancellation or non-renewal of the Policy. Such Discovery Period Premium will be deemed to be fully earned as of the inception of the Discovery Period. This clause and the right contained within will not apply if this Policy is terminated by the Insurer for failure to pay any premium when due.

EXTENSIONS

(A)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the estates, heirs, legal representatives or assigns of an **Insured Person** who is deceased or against the legal representatives or assigns of an **Insured Person** who is incompetent, insolvent or bankrupt, to the extent that such **Claims** would have been covered by this Policy in the absence of such death, incompetence, insolvency or bankruptcy.

(B)     Subject to its terms and conditions, this Policy will afford coverage for **Claims** for **Wrongful Acts** of an **Insured Person** if such **Claims** are made against the **Insured Person's** lawful spouse solely by reason of such spouse's legal status as a spouse of the **Insured Person** or such spouse's ownership interest in property which the claimant seeks as recovery for alleged **Wrongful Acts** of the **Insured Persons**. For purposes of the Policy, amounts which such spouse becomes legally obligated to pay by reason of such **Claim** will be treated as **Loss** which the **Insured Person** is legally obligated to pay on account of the claim made against the **Insured Person**. This coverage extension does not apply, however, to the

HOUSTON CASUALTY COMPANY

extent the **Claim** alleges any wrongful act or omission by the **Insured Person's** spouse.

CONDITIONS

(A)    <u>Limit of Liability and Retention</u>

   (1)    The Insurer's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period** will not exceed the Limit of Liability set forth in Item 3 of the Declarations.

   (2)    **Defense Costs** will be part of and not in addition to the Limit of Liability, and payment of **Defense Costs** will reduce the Limit of Liability. **Defense Costs**, as incurred, will also be applied against the retention.

   (3)    The retention stated in Item 4 of the Declarations will apply to **Loss**, including **Defense Costs**:

      (a)    which the **Insured Organization** is obligated to pay as a result of **Claims** against it, or

      (b)    which the **Insured Organization** is required or permitted to pay as indemnification or advancement to or on behalf of the **Insured Persons** as a result of **Claims** against them, whether or not such **Loss** is actually paid, unless the **Insured Organization** is unable to pay such **Loss** as indemnification or advancement solely by reason of its financial insolvency.

   For purposes of this CONDITION (A)(3), the certificate of incorporation, charter, articles of association or other organizational documents of the **Named Organization** and each **Subsidiary**, including the bylaws and resolutions thereof, will be deemed to have been adopted or amended to provide indemnification and advancement to the **Insured Persons** to the fullest extent permitted by law.

   (4)    The Insurer will be liable only for the amount of **Loss** in connection with any **Claim** which is in excess of the retention stated in Item 4 of the Declarations, if applicable. Such retention is to be borne by the **Insureds** and remain uninsured. A single retention will apply to **Loss** arising from all **Claims** alleging the same **Wrongful Act** or related **Wrongful Acts**.

   (5)    One retention amount will apply to the covered portion of each and every single **Claim**.

HOUSTON CASUALTY COMPANY

(B)    <u>Notice of **Claims** and Reporting Provisions</u>

    (1)   The **Insureds** must, as a condition precedent to the obligations of the Insurer under this Policy, give written notice, including full details, to the Insurer of any **Claim** as soon as practicable after it is made.

    (2)   If written notice of a **Claim** has been given to the Insurer pursuant to CONDITION (B)(1) above, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the **Claim** of which such notice has been given, or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** alleged in the **Claim** of which such notice has been given, will be considered to have been made at the time such notice was given.

    (3)   If, during the **Policy Period** or the Discovery Period (if applicable), the **Insureds** become aware of any circumstances which may reasonably be expected to give rise to a **Claim** against the **Insureds** and if, before the end of the **Policy Period** or the Discovery Period (if applicable), the **Insureds** give written notice to the Insurer of the circumstances and the reasons for anticipating such a **Claim**, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which have resulted or may result from such **Wrongful Act**, then any **Claim** subsequently made against the **Insureds** and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or related to any **Wrongful Act** described in such notice will be considered to have been made at the time such notice of circumstances was given.

    (4)   All notices under this CONDITION (B) must refer to the Policy Number, must be in writing, must request coverage under this Policy, and must be given by certified mail or prepaid express courier to the address set forth in Item 8 of the Declarations.

(C)    <u>Interrelationship of **Claims**</u>

All **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made.

HOUSTON CASUALTY COMPANY

(D)   **Defense Costs, Settlements, Allocation**

(1)   The Insurer will have no duty under this Policy to defend any **Claim**.  The **Insureds** must defend any **Claim** against them.  The **Insureds** may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without the Insurer's prior written consent, which consent may not be unreasonably withheld. Only those settlements, stipulated judgments and **Defense Costs** to which the Insurer has consented will be recoverable as **Loss** under the Policy. The Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any **Claim**.

(2)   The Insurer will pay covered **Defense Costs** on an as-incurred basis.  If it is finally determined that any **Defense Costs** paid by the Insurer are not covered under this Policy, the **Insureds** agree to repay such non-covered **Defense Costs** to the Insurer.

(3)   If **Loss** covered by this Policy and loss not covered by this Policy are both incurred in connection with a single **Claim**, either because the **Claim** includes both covered and uncovered matters, or because the **Claim** is made both against **Insureds** and against others not included within the definition of **Insured**, the **Insureds** and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts, taking into account the relative legal and financial exposures of the parties to the **Claim** and the relative benefits to be obtained by the resolution of the **Claim**.  The Insurer will be obligated to pay only those amounts or portions of **Loss** allocated to covered matters claimed against **Insureds**.  If the **Insureds** and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated to make an interim payment of that amount or portion of **Loss**, including **Defense Costs**, which the parties agree is not in dispute.

(4)   The Insurer will have no obligation to pay **Loss**, including **Defense Costs**, after the Insurer's maximum aggregate limit of liability, as set forth in Item 3 of the Declarations, has been exhausted by the payment of **Loss**, including **Defense Costs**.  If the Insurer's maximum aggregate limit of liability, as set forth in Item 3 of the Declarations, is exhausted by the payment of **Loss**, including **Defense Costs**, the premium will be fully earned.

HOUSTON CASUALTY COMPANY

(E)   Cancellation or Nonrenewal

(1)   The Insurer may cancel this Policy for non-payment of premium by sending not less than ten (10) days' notice to the **Named Organization** at its last known address. The Insurer may not otherwise cancel this Policy.

(2)   The **Named Organization** may cancel this Policy by mailing the Insurer written notice stating when such cancellation will be effective; provided, that the **Named Organization** may not cancel this Policy after the effective date of any acquisition of the **Named Organization** as described in CONDITION (F)(1) below. If the **Named Organization** cancels this Policy, the Insurer will retain the customary short rate premium. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment of unearned premium is not a condition of cancellation.

(3)   If the Insurer elects not to renew this Policy, the Insurer must give the **Named Organization** notice of non-renewal no less than sixty (60) days before the end of the **Policy Period**.

(4)   If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period will be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(F)   Changes in Exposure

(1)   If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to the **Named Organization**:

(a)   the **Named Organization** merges into or consolidates with another entity such that the **Named Organization** is not the surviving entity, or

(b)   another entity, person or group of entities and/or persons acting in concert acquires the right to elect, appoint or designate more than 50% of the directors or managers of the **Named Organization**, or

(c)   a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar official is duly appointed with respect to the **Named Organization**;

then coverage under this Policy will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts**

HOUSTON CASUALTY COMPANY

committed or allegedly committed before the effective date of such Change in Control, but coverage will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter and the premium will be considered fully earned in consideration of the coverage extended.

(2)    If, during the **Policy Period**, any of the following transactions or events (each a "Change in Control") occurs with respect to a **Subsidiary**:

    (a)    the **Subsidiary** ceases to be a **Subsidiary**, or

    (b)    a trustee in bankruptcy, receiver, conservator, rehabilitator, liquidator or other similar office is duly appointed with respect to the **Subsidiary**;

then coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will continue in full force and effect until the end of the **Policy Period** with respect to **Claims** for **Wrongful Acts** committed or allegedly committed before the effective date of such Change in Control, but coverage under this Policy with respect to **Claims** against such **Subsidiary** or any **Insured Person** thereof will cease with respect to **Claims** for **Wrongful Acts** committed or allegedly committed thereafter.

(3)    If, during the **Policy Period**, the **Insured Organization** acquires any assets and/or liabilities, acquires a **Subsidiary** or acquires any entity by merger and, at the time of such transaction, the assets and/or liabilities so acquired or the assets and/or liabilities of the entity so acquired exceed twenty-five (25%) of the total assets of the **Insured Organization** as reflected in the **Insured Organization's** most recent audited consolidated financial statements, such entity will be included with the term "**Subsidiary**" for a period of ninety (90) days after the date of such transaction. There will be no coverage under this Policy in respect of any **Claim** against the **Insureds** which is first made more than ninety (90) days after the effective date of the transaction described in this CONDITION (F)(3) unless the Insurer has received written notice containing full details of such transaction and the Insurer has agreed to provide such coverage. No coverage will be available under this policy for **Loss**, including **Defense Expenses**, from any **Claim** against any entity, or the **Insured Persons** of any entity, included with the term "**Subsidiary**" by reason of this CONDITION (F)(3) for any **Wrongful Act** committed or allegedly committed before the date of such transaction.

HOUSTON CASUALTY COMPANY

(G)    Other Insurance and Other Indemnification

    (1)    Such insurance as is provided by this Policy will apply only as excess over and will not contribute with any other valid and collectible insurance.

    (2)    All coverage for **Loss** from **Claims** against **Insured Persons** for **Wrongful Acts** in their **Outside Capacities** will be specifically excess of, and will not contribute with, any other insurance available to such **Insured Persons** by reason of their service in **Outside Capacities**, and any indemnification available to such **Insured Persons** in connection with their service in **Outside Capacities** from any source other than the **Insured Organization**, including but not limited to **Outside Entities**.

(H)    Cooperation and Subrogation

    (1)    In the event of any notice under CONDITION (B) of a **Claim** or of circumstances which may reasonably be expected to give rise to a **Claim**, the **Insureds** will give the Insurer all information, assistance and cooperation that the Insurer may reasonably request with respect thereto.

    (2)    In the event of any payment under this Policy, the Insurer will be subrogated to the extent of such payment to all of the Insureds' rights of recovery, including without limitation the **Insured Persons'** rights to indemnification or advancement from the **Insured Organization**. The **Insureds** must execute all papers required and do everything necessary to secure such rights and to enable the Insurer to bring suit in their name.

(I)    No Action against the Insurer

No action may be taken against the Insurer unless, as a condition precedent thereto, there has been full compliance with all of the terms of this Policy and until the amount of the **Insureds'** obligation to pay shall have been finally determined either by judgment against an **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Insurer. No person or organization will have any right under this Policy to join the Insurer as a party to any action against the **Insureds** to determine the Insurer's liability; nor may the Insurer be impleaded by the **Insureds** or their legal representatives in any such action.

(J)    Notices and Authority

By acceptance of this Policy, the **Insureds** agree that the **Named Organization** may act on behalf of all **Insureds** with respect to the giving and receiving of any notices, the payment of premiums and the receiving of any return premium, the

HOUSTON CASUALTY COMPANY

cancellation or renewal of this Policy and the acceptance of any amendments thereto.

(K)    Assignment

No assignment of interest under this Policy will bind the Insurer without the Insurer's written consent.

(L)    Titles and Headings

The titles and headings to the various paragraphs and sections in this Policy, including endorsements attached, are included solely for ease of reference and do not in any way limit, expand or otherwise affect the provisions of such paragraphs and sections to which they relate.

(M)    Representations and Severability

The **Insureds** represent that the particulars and statements contained in the **Application** are true, accurate and complete and are deemed material to the acceptance of the risk assumed by the Insurer under this Policy. This Policy is issued in reliance upon the truth of such representations. No knowledge or information possessed by any **Insured** will be imputed to any other **Insured** except for material facts or information known to the person or persons who signed the **Application**. If any of the particulars or statements in the **Application** is untrue, this Policy will be void with respect to any **Insured** who knew of such untruth or to whom such knowledge is imputed.

(N)    Changes

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer will not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy. This Policy cannot be waived or changed, except by written endorsement issued to form a part of this Policy.

(O)    Entire Agreement

By acceptance of this Policy, the **Insureds** and the Insurer agree that this Policy (including the **Application** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement the parties with respect to this insurance.

**JUDGE KENNELLY**
**MAGISTRATE JUDGE KEYS**

# EXHIBIT B

cut

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 210-2003-34529 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Julie D. Boumehdi | (773) 274-8391 | |
| | (773) 271-0982 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 2851 West Berwyn Chicago, IL 60625 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PLASTAG | 101 - 200 | (847) 258-1000 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 1800 Greenleaf  Elk Grove Village, IL 60007 | | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest  01-01-2003    Latest  07-10-2003

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent in April 1995.  My last position was Feeder.  During the month of January 2003, my supervisor began making sexually harassing comments toward me.  On or about March 1, 2003, I discovered that similarly situated male co-workers were being paid more than I was for similar duties.  I complained to Management about the pay difference, but nothing was done to correct it.  I was constructively discharged on July 10, 2003.

I believe I have been discriminated against because of my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I also believe I have been discriminated against because of my sex, Female, in violation of the Equal Pay Act of 1963, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Aug 05, 2003 _____  Date  Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

Equal Employment Opportunity Commission

## DISMISSAL AND NOTICE OF RIGHTS

| To: CERTIFIED MAIL NO.: 7099-3400-0014-4048-1930 C/P | From: |
|---|---|
| Julie D. Boumehdi<br>2851 West Berwyn<br>Chicago, Illinois  60625 | Equal Employment Opportunity Commission<br>Chicago District Office<br>500 West Madison Street, Suite 2800<br>Chicago, Illinois 60661-2511 |

[  ] *On behalf of a person aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2003-34529 | Ms. Patricia Jaramillo, Enforcement Supervisor | (312) 886-3576 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[  ]   The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[  ]   Respondent employs less than the required number of employees.

[  ]   Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge.  Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[  ]   You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge.  You have had more than 30 days in which to respond to our final written request.

[  ]   The Commission has made reasonable efforts to locate you and has been unable to do so.  You have had at least 30 days in which to respond to a notice sent to your last known address.

[  ]   The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged.  At least 30 days have expired since you received actual notice of this settlement offer.

[ x ]   The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

[  ]   Other (*briefly state*) _____

## - NOTICE OF SUIT RIGHTS -

[ x ]   **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge.  If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction.  **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[  ]   **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge.  If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction.  **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[  ]   **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

*October 24, 2003*

John P. Rowe, District Director

Enclosures

# EXHIBIT C



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

December 19, 2003

Ms. Julie D. Boumehdi
2851 West Berwyn
Chicago, Illinois  60625

       Re:    Charging Party: Boumehdi
                Respondent: Plastag
                EEOC Number: 210-2003-34529

Dear Ms. Boumehdi:

The enclosed Dismissal and Notice of Rights was sent to you on October 24, 2003 via certified
mail.  However, the Postal Service returned it to the Commission because it was unclaimed.

We are sending it again via regular mail so that you may have another opportunity to receive it.
We apologize for any inconvenience.

                                Sincerely,

                                John P. Rowe *(JS)*

                                John P. Rowe
                                District Director

Enclosure

Equal Employment Opportunity Commission

# DISMISSAL AND NOTICE OF RIGHTS

| To: CERTIFIED MAIL NO.: 7099-3400-0014-4048-1930 C/P | From: |
|---|---|
| Julie D. Boumehdi<br>2851 West Berwyn<br>Chicago, Illinois 60625 | Equal Employment Opportunity Commission<br>Chicago District Office<br>500 West Madison Street, Suite 2800<br>Chicago, Illinois 60661-2511 |

[    ] *On behalf of a person aggrieved whose identity is*
*CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 210-2003-34529 | Ms. Patricia Jaramillo, Enforcement Supervisor | (312) 886-3576 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[    ]    The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[    ]    Respondent employs less than the required number of employees.

[    ]    Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[    ]    You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 day in which to respond to our final written request.

[    ]    The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[    ]    The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ x ]    The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[    ]    Other *(briefly state)* _____

## - NOTICE OF SUIT RIGHTS -

[ x ]    **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. **If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.**

[    ]    **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue **WITHIN 90 DAYS** from your receipt of this Notice; otherwise your right to sue is lost.

[    ]    **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

*October 24, 2003*

*John P. Rowe*
John P. Rowe, District Director

Enclosures
    Information Sheet
    Copy of Charge
cc: Respondent(s)         Plastag

EEOC Form 161 (Test 5/5)



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests <u>should be made in writing to</u> **Sarita Gaddis** and mailed to the address above or faxed to **312/353-4041.**

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* <u>Before filing a lawsuit,</u> **but within 90 days of your receipt of the Right to Sue, or**

* <u>After your lawsuit has been filed.</u> **If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the first page of your court complaint showing the docket number.**

If you are the Respondent you may be granted access to the file **only after** a lawsuit has been filed. **Include with your request a copy of the first page of the court complaint reflecting the docket number.**

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

Before you can have access to the file you must sign an Agreement of Nondisclosure. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

Your request for access to your file will be acted upon no later than ten (10) days from receipt of your request.

You can review the file in our offices <u>and/or</u> request that a copy of the file be sent to you. Files cannot be removed from the office. **If you want to review the file, you must make an appointment to do so at 312/353-6176.** You will be contacted to schedule an appointment.

Your file will be copied by Uniscribe, 300 West Adams Street, Suite 900, Chicago, Illinois, 60606. You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the Uniscribe. Therefore, <u>it is recommended that you first review your file</u> to determine whether you want all, or only some, of the documents copied. EEOC cannot provide a count of the pages contained in it. If you choose not to review your file, it will be sent <u>in its entirety</u> to the copy service <u>and you will be responsible for the cost.</u> Payment must be made directly to Uniscribe.

# EXHIBIT D

I40  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

Julie Boumehdi

CASE NUMBER:    04C  0672

v.                          ASSIGNED JUDGE:    JUDGE NORGLE

Plastag Holding LLC

DESIGNATED                 MAGISTRATE JUDGE MASON
MAGISTRATE JUDGE:

): (Name and address of Defendant)   Plastag Holdings LLC
1800 Greenleaf
Elk Grove IL 60007

U ARE HEREBY SUMMONED and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Julie Boumehdi
2851 W Berwyn
Chicago IL 60625

answer to the complaint which is herewith served upon you, _____30_____ days after service of this
mmons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
: relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable
riod of time after service.

ICHAEL W. DOBBINS, CLERK

FEB 1 7 2004

DATE

) DEPUTY CLERK

AO 440  (Rev. 05/00)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served: _____

_____

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
   discretion then residing therein.

   Name of person with whom the summons and complaint were left: _____

☐ Returned unexecuted: _____

_____

_____

☐ Other (specify): _____

_____

_____

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____        _____
                        Date                                    *Signature of Server*

                                            _____
                                                       *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
_____ DIVISION

Julie Boumehdi
_____
(Name of the plaintiff or plaintiffs)

v.

Plastag Holding LLC
1800 Greenleaf
Elk Grove IL 60007
_____
(Name of the defendant or defendants)

RECEIVED
JAN 28 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

JUDGE NORGLE

CIVIL ACTION

04C 0672
NO. _____
(Case number will be supplied by the assignment clerk)

MAGISTRATE JUDGE MASON

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is Julie Boumehdi _____ of the county of COOK in the state of IL.

3. The defendant is Plastag Holding's LLC _____, who resides at (street address) 1800 GREENLEAF (city) Elk Grove (county) COOK (state) IL (ZIP) 60007 (Defendant's telephone number) (847) – 258-1000

4) The plaintiff sought employment or was employed by the defendant at

   (street address) _800 GREENLEAF_

   (city) _ELK GROVE_ (county) _COOK_ (state) _IL_ (ZIP code) _60067_

5. The plaintiff [check one box]

   (a) ☐   was denied employment by the defendant.

   (b) ☐   was hired and is still employed by the defendant.

   (c) ☑   was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,

   (month)_____, (day)_____, (year)_____.

7. (a)  The plaintiff [check one box] ☐ *has not* filed a charge or charges against the defendant
                                      ☐ *has*
   asserting the acts of discrimination indicated in this complaint with any of the following
   government agencies:

   (i)  ☑ the United States Equal Employment Opportunity Commission on or about
           (month) _8_ (day) _5_ (year) _2003_

   (ii) ☐ the Illinois Department of Human Rights on or about
           (month) _8_ (day) _5_ (year) _2003_

   (b)  If charges *were* filed with an agency indicated above, a copy of the charge is

        attached. ☑ YES ☐ NO

   It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department
   of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason
   to believe that this policy was not followed in this case.

8. (a) ☐   the United States Equal Employment Opportunity Commission has not issued a
            *Notice of Right to Sue.*

   (b) ☑   the United States Equal Employment Opportunity Commission has issued a *Notice
            of Right to Sue*, which was received by the plaintiff on (month)_____

(day)_____ (year) _2003_ a copy of which *Notice* is attached to this complaint.

9. The defendant discriminated against the plaintiff because of the plaintiff's [check all that apply]

   (a) ☐ Age (Age Discrimination Employment Act).

   (b) ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (c) ☐ Disability (Americans with Disabilities Act).

   (d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

   (f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

   (g) ☑ Sex (Title VII of the Civil Rights Act of 1964)

10. The plaintiff is suing the defendant, a state or local government agency, for discrimination on the basis of race, color, or national origin (42 U.S.C. §1983).

    ☐ YES      ☑ NO

11. Jurisdiction over the statutory violation alleged is conferred as follows: over Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); over 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; over the A.D.E.A. by 42 U.S.C.§12117.

12. The defendant [check all that apply]

    (a) ☐ failed to hire the plaintiff.

    (b) ☒ terminated the plaintiff's employment.

    (c) ☐ failed to promote the plaintiff.

    (d) ☐ failed to reasonably accommodate the plaintiff's religion.

    (e) ☐ failed to reasonably accommodate the plaintiff's disabilities.

    (f) ☐ other (specify): _WAGE, AND GENDER_

    _____

    _____

    _____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

MEN, WERE PAID MORE, FOR SAME
job. I WAS TREATED DIFFERENTLY
THAN MALE PeerS

_____

_____

14. [AGE DISCRIMINATION ONLY] Defendant knowingly, intentionally, and willfully

discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury.  ☐ YES  ☐ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [check all that apply]

(a) ☐    Direct the defendant to hire the plaintiff.

(b) ☐    Direct the defendant to re-employ the plaintiff.

(c) ☐    Direct the defendant to promote the plaintiff.

(d) ☐    Find that the defendant failed to reasonably accommodate the plaintiff's religion.

(e) ☐    Find that the defendant failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐    Direct the defendant to (specify): PAY DAMAGES

(g) ☑    If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☑    Grant such other relief as the Court may find appropriate.

(Plaintiff's signature) _Julie Boumehdi_

(Plaintiff's name) _Julie Boumehdi_

(Plaintiff's street address) _2851 W BERWYN._

_(City)_ _Chicago_    _(State)_ _IL_    _(ZIP)_ _60625_

(Plaintiff's telephone number) _(773) - 271-0982_

# EXHIBIT E

**FILED**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUL − 6 2004

JUDGE CHARLES R. NORGLE
U.S. District Court Judge

JULIE BOUMEHDI )

Plaintiff, )

**DOCKETED**

JUL 1 4 2004

v. )

NO.   04 C 0672

)

) Judge:   Charles Norgle

PLASTAG HOLDING LLC )
)
)
)

Defendant, )

AMENDED   **COMPLAINT AT LAW**

NOW COMES Plaintiff, Julie Boumehdi, by her attorneys, Carol Oshana of Mark Basile

& Associates, and complaining of Defendant, PLASTAG HOLDINGS, alleges as

follows:

**JURISDICTION AND VENUE**

1. This action arises under Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) et seq.

2. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, 42 U.S.C. §

2000(e) et seq., which grants jurisdiction to this Court.

3. The federal claim alleged in this complaint has sufficient substance to confer subject

matter jurisdiction on this court.

4. The conduct of Defendant complained of in this action occurred within this judicial

district.

**PLAINTIFF**

5. The Plaintiff, Julie Boumehdi, is a female citizen residing at 2851 West Berwyn,

12

Chicago, Illinois, in the United States who was employed by Plastag Holdings, LLC., and ceased employment on July 17, 2003, in the city of Elk Grove. All of the unlawful employment practices alleged below were committed in the State of Illinois, within the Northern District thereof.

**DEFENDANT**

6. That the Defendant is an "employer" with more than 15 employees in the State of Illinois, within the meaning of Title VII of the Civil Rights Act, as amended, as is qualified to do business and is actually doing business in the State of Illinois and Defendant's conduct of which Plaintiff's claims are based occurred in the State of Illinois, within the Northern District thereof.

**PLAINTIFF**

**ADMINISTRATIVE PROCEDURES**

7. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (Charge No. 210-2003-34529, a copy of which is attached hereto and incorporated herein as Exhibit A). On December 19, 2003, the EEOC sent Plaintiff a letter and her Right To Sue Notice, a copy of which is attached hereto and incorporated herein as Exhibit B. This suit has been timely filed within 90 days of receipt of said right-to-sue letter.

**JURY TRIAL DEMANDED**

8. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

**STATEMENT OF CLAIMS**
**COUNT I**

2

## DISCRIMINATION ON THE BASIS OF SEX PURUSANT TO TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended and as it appears in 42 U.S.C. § 2000e-2,

9. It is an unlawful employment practice for an employer to discharge an individual or otherwise to discriminate against any individual with respect to her compensation, terms, conditions or privileges of employment because of such individual's sex.  42 U.S.C. § 2000e-2(a)(1).

10. It is an unlawful employment practice for an employer to limit, segregate, or classify his or her employees in anyway that would deprive or tend to deprive an individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's sex.  42 U.S.C. § 2000e-2(a)(2).

11. Defendant discriminated against Plaintiff with respect to her compensation, terms, conditions and/or privileges of employment because of her sex, in violation of the Civil Rights Act.

12. Defendant terminated Plaintiff because of her sex, in violation of the Civil Rights Act.

13. Defendant classified their employees in a way that deprived or tended to deprive Plaintiff of employment opportunities because of her sex, in violation of the Civil Rights Act.

14. Defendant classified their employees in a way that adversely affected her status as an employee, because of her sex, in violation of the Civil Rights Act.

15. As a direct and proximate result of the Defendant's conduct, Plaintiff has sustained substantial economic losses, including past and future compensation, and other economic benefits.  Plaintiff has also sustained loss of financial stability peace of mind and future

3

security and has suffered embarrassment, humiliation, mental and emotional distress and discomfort, all to her detriment and damage in amounts not fully ascertained.

16. In acting as described above, the Defendant acted oppressively, maliciously, fraudulently and outrageously towards Plaintiff, with conscious disregard for her known rights and with the intention of causing, unjust and cruel hardship to Plaintiff. In acting in a deliberate, cold callous and intentional manner Defendant against the Defendant in an amount to punish and make an example of them. Defendant intended to and did injure and annoy Plaintiff. Plaintiff requests the assessment of punitive damages.

## COUNT II
## EQUAL PAY ACT

17. Plaintiff repeats and realleges Paragraphs 9-17 with the same force and effect as if herein stated.

18. It is an unlawful employment practice for an employer to discriminate against any individual with respect to her compensation because of such individual's sex. 29 U.S.C. § 206 et seq.

19. Defendant discriminated against Plaintiff in violation of the Equal Pay Act by paying male employees, who performed essentially the similar duties, had equal levels of skill, effort and responsibility, and performed under similar conditions as Plaintiff, a higher wage rate than that of Plaintiff, and paid Plaintiff less because she is female.

20. 15. As a direct and proximate result of the Defendant's conduct, Plaintiff has sustained substantial economic losses, including past and future compensation, and other economic benefits.

## COUNT III
## RETALIATION

4

21. Plaintiff repeats and realleges Paragraphs 1-16 with the same force and effect as if herein stated.

22. Title VII of the Civil Rights Act prohibits an employer from retaliation and coercion when an employee opposes sex discrimination.

23. Defendant discharged Plaintiff in July 2003 for openly opposing the sex discrimination by the Defendant.

24. Plaintiff's opposition to said discrimination was reasonable and in good faith.

25. Defendant discharged the Plaintiff following her opposition to discrimination within such a period of time as to raise an inference of retaliatory motivation.

26. As a direct and proximate result of the Defendant's conduct, Plaintiff has sustained substantial economic losses, including past and future compensation, and other economic benefits. Plaintiff has also sustained loss of financial stability peace of mind and future security and has suffered embarrassment, humiliation, mental and emotional distress and discomfort, all to her detriment and damage in amounts not fully ascertained.

27. In acting as described above, the Defendant acted oppressively, maliciously, fraudulently and outrageously towards Plaintiff, with conscious disregard for her known rights and with the intention of causing, unjust and cruel hardship to Plaintiff. In acting in a deliberate, cold callous and intentional manner Defendant intended to and did injure and annoy Plaintiff. Plaintiff requests the assessment of punitive damages against the Defendant in an amount to punish and make an example of them.


## PRAYER FOR RELIEF


5

WHEREFORE, plaintiff requests that this Court:

(a) Enter a declaratory judgment that Defendant' actions, policies, practices and procedures complained of herein have violated and continue to violate the rights of Plaintiff as secured by the statutes of the United States and the Constitution, statutes and common law of Illinois;

(b) Require Defendant to reinstate Plaintiff to a position equivalent to that which she previously held and to restore to Plaintiff full income and benefits that he would have received had she not been the victim of Defendant' malicious discriminatory acts;

(c) Award to Plaintiff damages for lost income and benefits at the same level as if she had been fully employed since July 2003 by Defendant;

(d) Award to Plaintiff damages in compensation for emotional distress, anguish and humiliation suffered by her, loss of his self-esteem and the ability to provide herself with the earned rewards of excellence in her chosen career;

(e) Grant to Plaintiff a judgment against Defendant for punitive or exemplary damages in a monetary award;

(f) Grant to Plaintiff a judgment against Defendant for compensatory, liquidated and consequential damages, including pain and suffering;

(h) Award to Plaintiff costs, disbursements and reasonable attorney fees; and

(i) Grant to Plaintiff such additional relief as this Court deems just and proper under the circumstances.

Carol Billie Oshana
MARK BASILE & ASSOCIATES
123 West Madison, 18th Floor
Chicago, Illinois 60602
(312) 404-8390

6

#38255

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JULIE BOUMEHDI | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.   04 C 0672 |
| | ) | |
| | ) | Judge:   Charles Norgle |
| | ) | |
| PLASTAG HOLDING LLC | ) | |
| | ) | |
| | ) | |
| Defendant, | ) | |

## JURY DEMAND

1. That pursuant to the provisions of Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands Trial by Jury.

Carol Billie Oshana
MARK BASILE & ASSOCIATES
123 West Madison, 18th Floor
Chicago, Illinois 60602
(312) 404-8390

8

CUT

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 210-2003-34529 |

| Illinois Department Of Human Rights | | and EEOC |
|---|---|---|
| State or local Agency, If any | | |

| Name (Indicate Mr., Ms., Mrs.) | Home Phone No. (Incl Area Code) | Date of Birth |
|---|---|---|
| Ms. Julie D. Boumehdi | (773) 271-8391 | |
| Street Address                        City, State and ZIP Code | (773) 271-0982 | |
| 2851 West Berwyn Chicago, IL 60625 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| PLASTAG | 101 - 200 | (847) 258-1000 |
| Street Address                        City, State and ZIP Code | | |
| 1800 Greenleaf  Elk Grove Village, IL 60007 | | |
| Name | No. Employees, Members | Phone No. (Include Area Code) |
| | | |
| Street Address                        City, State and ZIP Code | | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN  ☐ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ OTHER (Specify below.) | Earliest: 01-01-2003    Latest: 07-10-2003  ☒ CONTINUING ACTION |

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began employment with Respondent in April 1995. My last position was Feeder. During the month of January 2003, my supervisor began making sexually harassing comments toward me. On or about March 1, 2003, I discovered that similarly situated male co-workers were being paid more than I was for similar duties. I complained to Management about the pay difference, but nothing was done to correct it. I was constructively discharged on July 10, 2003.

I believe I have been discriminated against because of my sex, Female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

I also believe I have been discriminated against because of my sex, Female, in violation of the Equal Pay Act of 1963, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| Aug 05, 2003 _____  Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

EXHIBIT A

Equal Employment Opportunity Commission

## DISMISSAL AND NOTICE OF RIGHTS

To: CERTIFIED MAIL NO.: 7099-3400-0014-4048-1930 C/P     From:

Julie D. Boumehdi
2851 West Berwyn
Chicago, Illinois  60625

Equal Employment Opportunity Commission
Chicago District Office
500 West Madison Street, Suite 2800
Chicago, Illinois 60661-2511

[   ]  *On behalf of a person aggrieved whose identity is*
       *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | | EEOC Representative | Telephone No. |
|---|---|---|---|
| | 210-2003-34529 | Ms. Patricia Jaramillo, Enforcement Supervisor | (312) 886-3576 |

*(See the additional information attached to this form.)*

YOUR CHARGE IS DISMISSED FOR THE FOLLOWING REASON:

[   ]  The facts you allege fail to state a claim under any of the statutes enforced by the Commission

[   ]  Respondent employs less than the required number of employees.

[   ]  Your charge was not timely filed with the Commission, *i.e.*, you waited too long after the date(s) of the discrimination you alleged to file your charge. Because it was filed outside the time limit prescribed by law, the Commission cannot investigate your allegations.

[   ]  You failed to provide requested information, failed or refused to appear or to be available for necessary interviews/conferences, or otherwise refused to cooperate to the extent that the Commission has been unable to resolve your charge. You have had more than 30 days in which to respond to our final written request.

[   ]  The Commission has made reasonable efforts to locate you and has been unable to do so. You have had at least 30 days in which to respond to a notice sent to your last known address.

[   ]  The respondent has made a reasonable settlement offer which affords full relief for the harm you alleged. At least 30 days have expired since you received actual notice of this settlement offer.

[ x ]  The Commission issues the following determination: Based upon the Commission's investigation, the Commission is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[   ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -

[ x ]  **Title VII and/or the Americans with Disabilities Act:** This is your NOTICE OF RIGHT TO SUE, which terminates the Commission's processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.

[   ]  **Age discrimination in Employment Act:** This is your NOTICE OF DISMISSAL OR TERMINATION, which terminates processing of your charge. If you want to pursue your charge further, you have the right to sue the respondent(s) named in your charge in a court of competent jurisdiction. If you decide to sue, you must sue WITHIN 90 DAYS from your receipt of this Notice; otherwise your right to sue is lost.

[   ]  **Equal Pay Act (EPA):** EPA suits must be brought within 2 years (3 years for willful violations) of the alleged EPA underpayment.

On behalf of the Commission

*October 24, 2003*

John P. Rowe, District Director

Enclosures
   Information Sheet
   Copy of Charge
cc:  Respondent(s)        Plastag

NOV 14 2003

EEOC Form 161 (Test 5/95)
EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**

500 West Madison St., Suite 2800
Chicago, IL 60661
PH: (312) 353-2713
TDD: (312) 353-2421
ENFORCEMENT FAX: (312) 886-1168
LEGAL FAX: (312) 353-8555

December 19, 2003

Ms. Julie D. Boumehdi
2851 West Berwyn
Chicago, Illinois  60625

      Re:    Charging Party: Boumehdi
              Respondent: Plastag
              EEOC Number: 210-2003-34529

Dear Ms. Boumehdi:

The enclosed Dismissal and Notice of Rights was sent to you on October 24, 2003 via certified mail. However, the Postal Service returned it to the Commission because it was unclaimed.

We are sending it again via regular mail so that you may have another opportunity to receive it. We apologize for any inconvenience.

                  Sincerely,

                  John P. Rowe (B)

                  John P. Rowe
                  District Director

Enclosure

# EXHIBIT F

# HCC GLOBAL FINANCIAL PRODUCTS

*8 Forest Park Drive · P.O. Box 4018 · Farmington · Connecticut 06034 · Telephone: 860.674.1900 · Facsimile: 860.676.1737     www.hcc-global.com*

July 20, 2005

Mr. Joe Kania
Plastag Holdings, LLC
1800 Greenleaf
Elk Grove, IL  60007

*Jennifer McClellan*
*860 = 284- 6174*

|  | Re: | Insured: | **Plastag Holdings, LLC** |
|---|---|---|---|
|  |  | **Insurer:** | **Houston Casualty Company ("Houston Casualty")** |
|  |  | **Policy No.:** | **14-MG-03-A1953 ("the Policy")** |
|  |  | **Subject:** | **Julie Boumehdi** |
|  |  | **File No.:** | **A-05-11418** |

Dear Mr. Kania:

We acknowledged receipt of the referenced matter by letter dated April 1, 2005.  This letter provides you with our preliminary coverage analysis, on behalf of Houston Casualty, under the Policy.  Please note that a definitive coverage analysis may not be possible until all of the issues raised in this matter have been resolved.  Our analysis is subject to modification if and when other coverage issues develop.

## Summary of the Coverage

Please note that because many of the Policy provisions referred to herein are summarized, and other provisions not expressly referred to herein may be applicable, we recommend that you read the Policy in its entirety.  Also, please note that the terms in this letter appearing in bold type are defined terms in the Policy.  Please refer to the Policy for the specific meanings of those terms.

Houston Casualty issued Directors, Officers and Private Organization Liability Insurance Policy No. 14-MGU-03-A1953 ("the Policy") to Plastag Holdings, LLC. ("Plastag") for the **Policy Period** from March 28, 2003 to March 28, 2004.  The Policy provides coverage for **Loss** arising from **Claims** first made against **Insureds** during the **Policy Period** for **Wrongful Acts**.  The Policy contains two Insuring Agreements: Insuring Agreement A applies to **Claims** made against **Insured Persons**, and Insuring Agreement B applies to **Claims** made against the **Insured Organization**. Endorsement No. 2 to the Policy states that the Insurer will not be liable to make any payment of **Loss** in connection with any **Claim** arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed, in whole or in part, prior to March 28, 2003.    The    Policy    has    an    aggregate    limit    of    liability    of    $3,000,000.

| Barcelona | Houston | London | Jersey City |
|---|---|---|---|
| Tel: +34 93.530.7300 | Tel: +1 (713) 914.8034 | Tel: +44 20.7327.8190 | Tel: +1 (201) 216.1136 |

A SUBSIDIARY OF HCC INSURANCE HOLDINGS, INC.

Mr. Joe Kania
Plastag Holdings, LLC
7/20/05
Page 2 of 5

### Summary of this Matter

The coverage analysis stated herein is based upon the unsubstantiated allegations of the claimant, and by referring to them Houston Casualty does not suggest that they have merit.

We are in receipt of a copy of the Complaint of Employment Discrimination that Julie Boumehdi filed in the U.S. District Court for the Northern District of Illinois on or about February 13, 2004 (the "Complaint").[1]   The named defendant in the Charge and the Complaint is Plastag Holdings LLC. Ms. Boumehdi claims that she was discriminated against because of her sex in violation of Title VII of the Civil Rights Act of 1964. Specifically, Ms. Boumehdi claims that during the month of January, 2003, her supervisor began making sexually harassing comments toward her. Additionally, Ms. Boumehdi claims that on or about March 1, 2003, she discovered that similarly situated male co-workers were being paid more than she for similar duties and that when she complained to management, nothing was done to correct the problem. Finally, Ms. Boumehdi claims she was constructively discharged on or about July 10, 2003.

### Coverage Analysis

As noted above, the following is our preliminary coverage analysis based on the information we have received to date. Please note that, because our investigation into this matter is ongoing, this analysis may be modified or supplemented as additional information is developed.

This matter concerns Insuring Agreement (B).  Ms. Boumehdi's initial Charge constitutes a **Claim**, as does the Complaint. Pursuant to Condition (C), all **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made. Therefore, the Charge and the Complaint are deemed a single **Claim** first made when Plastag received Notice of the Charge in or about August 2003. Ms. Boumehdi's allegations of discrimination constitute **Employment Practices Wrongful Acts**, which are **Wrongful Acts**. The sole named defendant, Plastag Holdings, LLC, is an **Insured Organization**.  Accordingly,

---

[1] Pursuant to further investigation, it appears as if this **Claim** was first made on or about August 5, 2003, during the **Policy Period** in which Policy No. 14-MG-03-A1953 was in effect.  Specifically, it has come to our attention that on or about August 5, 2003, Julie Boumehdi filed a Charge of Discrimination with the Illinois Department of Human Rights and the EEOC (collectively, the "Charge"). It appears as if she was issued a Notice or Right to Sue on or about December 19, 2003. The Complaint subsequently filed in the U.S. District Court for the Northern District of Illinois alleges the same facts and circumstances as those alleged in the Charge. Therefore, pursuant to Condition (C), all **Claims** alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions or events will be considered to be a single **Claim** and will be considered to have been made at the time the earliest such **Claim** was made.  Therefore, the Charge and the Complaint are deemed a single **Claim** first made when Plastag received notice of the Charge in May of 2003.

Mr. Joe Kania
Plastag Holdings, LLC
7/20/05
Page 3 of 5

Houston Casualty accepts this matter for coverage subject to the Policy's terms, conditions and limitations, including those discussed herein.

Pursuant to Endorsement No. 2 to the Policy, there is no coverage for any **Claim** arising out of, based upon or attributable to any **Wrongful Act** committed or allegedly committed, in whole or in part, prior to March 28, 2003. Therefore, there is no coverage for any **Loss**, including **Defense Costs**, for any aspect of this **Claim** in which Ms. Boumehdi alleges discrimination that is based upon or attributable to any **Wrongful Act** committed or allegedly committed, in whole or in part, prior to March 28, 2003.

Under Definition (J), **Loss** includes damages, settlements, judgments and **Defense Costs**. **Loss** also includes punitive or exemplary damages, if insurable by law. **Loss** does not include wages, fines, taxes or penalties or matters uninsurable by law.

Pursuant to Exclusion (A), there is no coverage for any **Claim** arising out of, based upon or attributable to the gaining of any **Insured** of any profit or advantage to which such **Insured** was not legally entitled, if established by a final adjudication. If it were proven by a final adjudication that any **Insured(s)** gained any such profit or advantage, there would be no coverage for such **Insured(s)** for this **Claim**.

Pursuant to Exclusion (B), there is no coverage for any **Claim** arising out of, based upon or attributable to the commission by any **Insured** of any criminal or deliberately fraudulent or dishonest act, if established by a final adjudication. If it were proven by a final adjudication that any **Insured(s)** committed such acts, there would be no coverage for such **Insured(s)** for this **Claim**.

Additionally, to the extent the **Claim** alleges intentional misconduct by the **Insureds**, such matters may be deemed uninsurable under the law pursuant to which the Policy is to be construed and may this be excluded from coverage.

Pursuant to Condition (D)(1), Houston Casualty has no duty to defend any **Insured**. The **Insureds** must defend any **Claim** against them. While Houston Casualty has the right to associate in the defense and the negotiation of any settlement of any **Claim**, it is the **Insured's** responsibility to retain defense counsel, subject to Houston Casualty's right of approval. We have been advised that Helen N. Baker of Freeborn & Peters, LLP has been retained as defense counsel in this matter. Pursuant to HCC Global's Defense Counsel Guidelines, please note that Houston Casualty will not be in a position to approve this choice of defense counsel until we have received and reviewed the selected counsel's experience and hourly billing rate.

Condition (D)(1) also provides that the **Insureds** may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any **Defense Costs** without Houston Casualty's prior written consent. Only those settlements, stipulated judgments and

Mr. Joe Kania
Plastag Holdings, LLC
7/20/05
Page 4 of 5

**Defense Costs** to which Houston Casualty has consented will be recoverable as **Loss**. In that regard, we would require the **Insureds** to obtain Houston Casualty's consent before making or responding to any settlement proposal, and we would ask the **Insured** to inform us promptly if it receives any settlement-related communication from any other party. Please also forward copies of all invoices issued by defense counsel.

Condition (D)(3) concerns allocating **Loss** covered by the Policy and loss not covered by the Policy in connection with a single **Claim**. The Insurer and the **Insured** are required to use their best efforts to determine a fair and proper allocation of all such amounts. Condition (D)(3) may apply here because, as noted above, there is no coverage available for certain aspects of this **Claim**.

Under Condition (G), the Policy applies only as excess over any other valid and collectible insurance. In that regard, please advise us whether there are any such other policies of insurance that may respond to this matter, and if so, what steps have been taken to secure coverage under such policies. Please send us copies of all such policies along with the coverage positions of the insurer(s).

Finally, please note that there is a $50,000 retention that applies to covered **Loss** incurred by the **Insureds** in connection with this **Claim**. Accordingly, the first $50,000 of covered **Loss**, including **Defense Costs** – i.e., that portion of all loss including costs of defense that is allocated as covered **Loss** – will be payable by Plastag. The portion of loss resulting from this **Claim** that is allocated as uncovered loss will not apply against the retention. Houston Casualty's obligation to pay **Loss** resulting from this **Claim** will be triggered only upon exhaustion of the retention by the **Insured**.

Please keep us apprised of all further developments in this matter, including sending copies of all pertinent pleadings and other documents.

If you do not agree with any part of the foregoing analysis, please advise us in writing. If you have any questions, please feel free to call.

Houston Casualty respectfully continues to reserve all rights and defenses available to it under the policy and otherwise, including the right to raise additional issues that may affect coverage.

Very truly yours,

Michelle A. Diaz-Matos
Claims Counsel

Mr. Joe Kania
Plastag Holdings, LLC
7/20/05
Page 5 of 5


cc:     Timothy O'Connor
        Senior Vice President
        Palmer & Cay
        Executive Liability Advisors
        666 Third Avenue
        17th Floor
        New York, NY  10017

# EXHIBIT G

# DrinkerBiddle&Reath
L L P

Dina M. Gold·
202-842-8880
dina.gold@dbr.com

·Admitted in DC, MD, and NY

*Law Offices*

1500 K Street, N.W.
Suite 1100
Washington, DC
20005-1209

202-842-8800
202-842-8465 fax
www.drinkerbiddle.com

PHILADELPHIA
NEW YORK
LOS ANGELES
SAN FRANCISCO
CHICAGO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

September 27, 2006

**VIA FEDERAL EXPRESS**

Mr. John Hermann
Plastag Holdings, LLC
1800 Greenleaf
Elk Grove, IL 60007

RE:  Insured:      Plastag Holdings, LLC (the "Insured")
     Insurer:      Houston Casualty Company ("HCC")
     Policy No.:   14-MG-03-A1953 (the "Policy")
     Subject:      Julie Boumehdi

Dear Mr. Hermann:

        As you know, this firm represents HCC with respect to the above referenced matter. In light of our review of the file, additional documents requested and received from defense counsel and the Insured and information obtained during our telephone communications with the Insured, this letter will supplement the July 20, 2005 letter from Michelle A. Diaz-Matos, Claims Counsel for HCC Global Financial Products, concerning the availability of coverage for the Boumehdi matter. For the reasons set forth below, we regret to inform you of HCC's view that coverage is unavailable for this matter under the Policy.

        On or about August 5, 2003, Boumehdi filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") and the Illinois Department of Human Rights, Charge No. 210-2003-34529 (the "Charge"). In the Charge, Boumehdi alleged that she had been subjected to discriminatory and harassing treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Equal Pay Act of 1963, as amended, beginning in January of 2003. Specifically, she alleged that she was paid less than her similarly situated male co-workers, that she was subjected to harassment based on her gender, and that she complained about this discrimination and harassment. She further alleged that she was constructively discharged on July 10, 2003 as a result of the discrimination and harassment that began in January 2003.

        On or about September 12, 2003, the Insured submitted its response to the Charge to the EEOC. On October 24, 2003, the EEOC issued a Dismissal and Notice of Rights to Boumehdi, which was also sent to the Insured.

*Established
1849*

DrinkerBiddle&Reath
L L P

Mr. John Hermann
September 27, 2006
Page 2

On January 28, 2004, Boumehdi filed a Complaint of Employment Discrimination in the United States District Court for the Northern District of Illinois, Civil Action No. 04C 0672 (the "Complaint") based upon the allegations in the Charge. On July 6, 2004, Boumehdi filed an Amended Complaint at Law (the "Amended Complaint"). The Insured filed its Answer and Affirmative Defenses on July 20, 2004. On November 4, 2004, the Insured served written discovery requests on Boumehdi, and on November 5, it noticed her deposition.

The Court held status hearings with respect to this matter at least on April 28, June 16, and November 5, 2004. At the November 5, 2004 status conference, the Court called for a final pretrial order to be submitted no later than February 18, 2005, with a jury trial to begin on March 1, 2005. On December 29, 2004, Boumehdi served the Insured with her written discovery requests. On March 4, 2005, the Insured served objections to these discovery requests.

The Insured did not provide notice of this matter to HCC until March 28, 2005, over one-and-a-half years after it received notice of the Charge, over one year after being served with the Complaint, and nearly nine months after it was served with the Amended Complaint. Prior to providing HCC with notice of this matter, the Insured responded to the Amended Complaint and engaged in written discovery. It also appears that Boumehdi made at least one settlement demand prior to the time that the Insured provided notice of this matter to HCC.[1]

Condition (B) of the Policy provides that, "[t]he Insureds must, as a condition precedent to the obligations of the Insurer under this Policy, given written notice, including full details, to the Insurer of any Claim as soon as practicable after it is made." It is clear that the Insured here did not provide HCC with notice as soon as practicable after the Claim was made.

Pursuant to Definition (B) of the Policy,

Claim means:

---

[1] The Insured also did not provide notice of the Boumehdi matter to its predecessor-in-interest, Norwood, until October 19, 2005, nearly an additional seven months after it provided notice to HCC. Pursuant to the Asset Purchase Agreement between the Insured and Norwood dated March 27, 2003, Norwood may have had an obligation to indemnify the Insured for the Boumehdi matter. However, on November 1, 2005, Norwood informed the Insured that its failure to provide notice in accordance with the Asset Purchase Agreement—i.e., within 30 days of the Insured becoming aware of the matter—among other things, precluded indemnification under the Asset Purchase Agreement.

DrinkerBiddle&Reath
L L P

Mr. John Hermann
September 27, 2006
Page 3

          (1)    any written demand, oral demand or demands for non-monetary relief

          (2)    any civil proceeding commenced by service of a complaint or similar pleading,

          (3)    any arbitration, mediation or similar dispute resolution proceeding, or

          (4)    any administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

provided, that any such demand or proceeding will be a Claim only if and to the extent that it seeks monetary relief.
…

The Charge is clearly a Claim under Definition (B)(4). Accordingly, the Insured was required to provide notice of the Charge to HCC as soon as practicable. It is clear that the Insured did not provide HCC with notice of the Charge as soon as practicable because more than eighteen months passed before such notice was provided. During that eighteen-month period, Boumehdi filed the Complaint and the Amended Complaint; the Insured retained defense counsel and filed a response to the Amended Complaint; the Insured engaged in discovery and received a trial date; and the Insured received a settlement demand.

    The amount of time that transpired between the Insured receiving notice of the Claim and providing notice of that Claim to HCC and the actions that the Insured took defending that Claim make it clear that the Insured did not provide notice to HCC of this Claim as soon as practicable.

    Prior to and during our telephone conference with the Insured and its representatives on September 6, 2006, we asked for an explanation regarding the Insured's failure to comply with Condition (B) of the Policy. The Insured's initial response was to state that the Charge did not constitute a Claim under the Policy. However, as set forth above, the Charge clearly meets the Policy definition of a Claim.

    Secondarily, the Insured responded that it chose not to report this matter to HCC because it believed that the Boumehdi matter would be resolved at a minimal cost. However, the Insured's subjective sense as to the ultimate cost of a Claim does not relieve the Insured of its obligation to comply with Condition (B) as a condition

DrinkerBiddle&Reath
L L P

Mr. John Hermann
September 27, 2006
Page 4

precedent to any obligations that HCC may have under the Policy. Moreover, the Insured's failure to report this matter in a timely manner also constitutes a breach of Condition (D)(1) of the Policy, which provides that "[t]he Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim." Among other matters, had the Insured provided HCC with notice of this Claim as soon as practicable, HCC may have been able to assure that Norwood was provided with timely notice of Norwood's apparent indemnification obligations.[2]

The Insured's protracted delay in providing notice of this Claim is particularly troubling because the Insured renewed its coverage with HCC after receiving notice of the Charge and being served with the Complaint, but before providing HCC with notice of the Claim as required by the Policy's notice provision. The Claim was clearly relevant to the renewal process as it may have affected the terms and conditions of the renewal policy issued by HCC for the following policy year. Indeed, the Boumehdi matter was only reported to HCC at the conclusion of the term of the renewal policy and after the Insured had apparently determined that it would not seek further coverage from HCC.

During our September 6 telephone conference, the Insured suggested that, following notice to HCC, HCC directed the defense of the Amended Complaint in a manner that differed from how the Insured would have conducted the defense in the absence of HCC's involvement. In reviewing all of the information available to us, it is our clear understanding that no one at HCC in any manner dictated the defense of the Amended Complaint. To the contrary, it appears that defense counsel did not timely respond to HCC's various requests for copies of pleadings, invoices and budgets. Some, but not all, of this information was provided only weeks if not months after initially requested. Some information was never provided. In any event, the Policy is clear that "[t]he Insurer will have no duty under this Policy to defend any Claim. The Insureds must defend any Claim against them." See Condition (D)(1).

In addition to the foregoing, we also wish to reiterate on behalf of HCC that Endorsement No. 2 to the Policy appears to preclude coverage for this Claim. This Endorsement provides that "… the Insurer will not be liable to make any payment of Loss in connection with a Claim arising out of, based upon or attributable to any Wrongful Act Committed or allegedly committed, in whole or in part, prior to 3/28/03." Upon our review of all of the applicable materials, it appears that, in fact, all of the Wrongful Acts alleged in the Claim arose out of, are based upon, or are attributable to Wrongful Acts allegedly committed at least in part prior to March 28, 2003. That is,

---

[2] Condition (H)(2) of the Policy requires the Insured to "do everything necessary to secure [the Insurer's subrogation] rights and to enable the Insurer to bring suit in their name." The Insured's failure to provide either Norwood or HCC with timely notice of this matter appears to have compromised or precluded HCC's subrogation rights under the Policy.

DrinkerBiddle&Reath
L L P

Mr. John Hermann
September 27, 2006
Page 5

even though some of the alleged Wrongful Acts may have taken place after March 28,
2003, any such Wrongful Acts arose from, are based upon, or are attributable to
Wrongful Acts that are alleged to have taken place prior to March 28, 2003.

In this regard, we respectfully disagree with the analysis that Lowis & Gellen LLP
set forth in its July 17, 2006 letter to Robert J. Castillo of Valor Equity Partners. Robert
Smeltzer of that firm suggests that Boumehdi's allegations of sexual harassment did not
"arise" until they prompted her constructive discharge on or about July 10, 2003 because
they were not sufficiently "hellish" until that time. However, Mr. Smeltzer's analysis
relates to whether a Title VII allegation of a hostile work environment is actionable, not
whether allegations of hostile work environment fall within the scope of Endorsement
No. 2.

Boumehdi alleges that the hostile environment sexual harassment to which she
was subjected caused actionable damages prior to, and separate and apart from, her
involuntary termination from employment.[3]  Whether or not Boumehdi can recover for
her pre-March 28, 2003 allegations is a different analysis from whether or not such
allegations are made, thereby causing this Claim to be excluded from coverage pursuant
to Endorsement No. 2.

Boumehdi also alleges that, beginning at a time prior to March 28, 2003, the
Insured's unlawful gender discrimination resulted in her receiving different pay from her
male comparators in violation of both Title VII and the Equal Pay Act. Her allegations of
gender discrimination in pay are not dependent upon her involuntary termination from
employment to become actionable. In addition, even if Boumehdi's hostile work environment
allegations somehow did not arise until after March 28, 2003, there is no question that
part of the Claim—that relating to discriminatory compensation—arose from, was based
upon, or is attributable to events that took place prior to March 28, 2003. Thus, in
accordance with the plain language of Endorsement No. 2, there is no coverage for any
part of the Claim.

For all of the foregoing reasons, it does not appear that there is coverage for the
Boumehdi matter under the Policy. Please promptly provide us with any additional
information or materials that the Insured believes may affect this coverage determination.

Without prejudice to any of the foregoing, HCC continues to reserve all of its
rights, remedies and defenses under the Policy and otherwise, including but not limited to

---

[3] Mr. Meltzer is also incorrect when he states that there is "no credible evidence to suggest that Boumehdi
complained about those comments or Vega's treatment of her" in the January to mid-March 2003 time
period. In fact, Human Resources Director Michael Bell testified that Boumehdi specifically told him that
she believed she had been subjected to "discrimination" prior to March 28, 2003.

DrinkerBiddle&Reath
L L P

Mr. John Hermann
September 27, 2006
Page 6

the right to raise additional defenses to coverage if they are determined to be applicable.
If you have any questions, please do not hesitate to contact me.

Very truly yours,

Dina M. Gold

cc:    Carolynn Burns
       Jennifer MacLelland
       Douglas M. Mangel

# EXHIBIT H

**DrinkerBiddle&Reath**
L L P

Douglas M. Mangel
202-842-8837
douglas.mangel@dbr.com

*Law Offices*

3500 K Street, N.W.
Suite 1100
Washington, DC
20005-1209

202-842-8800
202-842-8465 fax
www.drinkerbiddle.com

PHILADELPHIA
NEW YORK
LOS ANGELES
SAN FRANCISCO
CHICAGO
PRINCETON
FLORHAM PARK
BERWYN
WILMINGTON

October 12, 2007

**VIA ELECTRONIC MAIL**

Mr. Robert Castillo
Chief Financial Officer
Plastag Holdings, LLC
1800 Greenleaf
Elk Grove Village, IL  60007-5502

Re:  Insurer:      Houston Casualty Company ("HCC")
     Insured:      Plastag Holdings LLC ("Plastag")
     Policy No.:   14-MG-03-A1953 (the "Policy")
     Matters:      *Boumehdi v. Plastag Holdings, LLC*

Dear Mr. Castillo:

This will respond to your letter to our firm dated October 8, 2007. While you request in your letter that our client, HCC, reconsider its previous denial of coverage in this matter, you have provided no explanation as to why reconsideration is appropriate. Instead, you merely ask that HCC pay the full amount of a settlement that Plastag apparently is in the process of negotiating with the plaintiff.

For the reasons set forth in our letter to the insured dated September 27, 2006, HCC continues to believe that coverage is unavailable for this matter. We also note that while your letter makes reference to the late notice defense raised by HCC in its prior correspondence, it fails to acknowledge that HCC also denied coverage under its "prior acts" exclusion, which bars coverage for a Claim that arises out of or is based upon *any* Wrongful Act committed or allegedly committed, *in whole or in part*, prior to March 28, 2003. This exclusion is triggered here because the claimant states in her Charge of Discrimination that the alleged sexual harassment began in January 2003 and that she became aware of pay discrimination issues on or about March 1, 2003. Moreover, the Rule 56.1 Statements of Material Facts submitted by the parties in this matter are replete with references to Wrongful Acts allegedly committed prior to March 28, 2003.

HCC therefore must respectfully reiterate its denial of coverage for all the reasons set forth in its previous correspondence and pursuant to any and all additional provisions in the Policy that may be applicable. If you wish to discuss this matter further, please feel free to contact me.

Sincerely,

Douglas M. Mangel

*Established*
*1849*

DC\616147\1

# EXHIBIT I

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Agreement") is made and entered into by and between JULIE BOUMEHDI ("Boumehdi") and PLASTAG HOLDINGS, L.L.C. including all its current and former parents, employees, agents, officers, directors, stockholders, subsidiaries, divisions, affiliates, successors and assigns (collectively "the Company"):

WHEREAS, Boumehdi has a lawsuit pending in the United States District Court for the Northern District of Illinois entitled *Julie Boumehdi v. Plastag Holdings, LLC*, Case No. 04 CV 672 ("Lawsuit"), in which she makes claims of sex discrimination, sex harassment and retaliation relating to her employment at the Company, including the termination thereof;

WHEREAS, the Company denies all of Boumehdi's claims;

WHEREAS, the parties desire to effect a final settlement and compromise of all of Boumehdi's claims and all other claims and issues that have been raised or could have been raised by Boumehdi against the Company, without the concession of any liability or fault on the part of the Company or the admission of any allegations made by Boumehdi; and

WHEREAS, the parties have been fully represented and advised of their rights by their respective attorneys;

NOW, THEREFORE, in consideration of the mutual covenants and promises contained herein, the parties agree as follows:

1.      Upon execution of this Agreement, Boumehdi will move the Court for dismissal with prejudice of the Lawsuit with leave to reinstate within 30 days in the event that the payments set forth in Paragraph 2 do not clear, each side to bear its own costs.

2.      The Company agrees to pay Boumehdi Two Hundred and Eighty Five Thousand and 00/100 Dollars ($285,000.00), in full and complete settlement of any claims she has or may have or that she has raised or could have raised against the Company, as follows:

1433619v1/24049-0001

a.     A check will be issued payable to Julie Boumehdi in the amount of Twenty Five Thousand and 00/100 Dollars ($25,000.00) upon execution of this Agreement. A second check will be issued payable to Julie Boumehdi in the amount of One Hundred and Thirty Six Thousand and 00/100 Dollars ($136,000.00) by January 2, 2008. These checks are in settlement of Boumehdi's pay claims and for which a 1099 form as required by law will be provided at the appropriate time. In no event will the second check be issued before the Court enters an order dismissing the Lawsuit with prejudice.

b.     A check will be issued no later than January 2, 2008, payable Basile Law Firm (FEIN No. 20-125371) in the amount of One Hundred Thousand and Twenty Four and 00/100 Dollars ($124,000.00) in settlement of all claims for attorneys fees and costs relating to the Lawsuit and for which appropriate Forms 1099 will issue to Basile Law Firm as required by law at the appropriate time. In no event will this check be issued before the Court enters an order dismissing the Lawsuit with prejudice.

3.     Boumehdi agrees not to seek employment with the Company at any time in the future and that any such application may be denied by the Company pursuant to the terms of this Agreement should one be submitted.

4.     Boumehdi agrees not to discuss or disclose the terms of this Agreement and/or her claims as encompassed by the Lawsuit except insofar as it is necessary to reveal this information to her attorneys, accountant or tax preparer, members of her immediate family, or as required to do so by law. Boumehdi and the Company acknowledge and agree that, if Boumehdi or her counsel, directly or indirectly, breach the confidentiality provision of this Agreement, Boumehdi

shall pay to the Company the sum of SEVENTY ONE THOUSAND TWO HUNDRED AND FIFTY DOLLARS ($71,250.00). Plaintiffs and the Company acknowledge and agree that the Company's damages from a breach of the confidentiality provision of this Agreement would be difficult to ascertain, and that twenty-five percent (25%) of the total settlement amount, or $71,250.00, constitutes a good faith and reasonable estimate by the parties of the damages the Company is likely to suffer if Boumehdi or her counsel breach the confidentiality provision of this Agreement and that this sum is a proper liquidated damage and not a penalty hereunder. Further, should the Company be required to pursue a claim that Boumehdi or her counsel has breached the confidentiality provision of this Agreement, the Company shall be entitled to recover its reasonable attorneys' fees and costs incurred in pursuing such a claim from the party who breached the confidentiality provision of this Agreement.

5.      Boumehdi is to direct all references to the CHIEF FINANCIAL OFFICER, ROBERT CASTILLO, who will respond only with last date of employment, position held and confirmation of last wage rate. The Company's designated representative shall not make any disparaging or damaging comments about Boumehdi.

6.      In consideration of the benefits, commitments, representations and payments in this Agreement, Boumehdi for herself, her heirs, her executors and her administrators releases and forever discharges the Company from any and all claims, demands, sums of money, contracts, controversies, agreements, promises, damages, costs, causes of action and liabilities of any kind or character whatsoever which she has or may have against the Company or which she has raised or could have raised against the Company, including but not limited to all claims that were or could have been asserted in the Lawsuit, except insofar as it may be necessary to take action with respect to the enforcement of this Agreement. The claims released herein specifically include any claim arising out of the employment of Boumehdi by the Company,

1433619v1/24049-0001                                3

including but not limited to any claim for severance pay, wages, commissions, incentive
compensation, profit sharing, vacation pay, benefits, breach of contract, employment
discrimination, sexual or other types of harassment, defamation, wrongful discharge, infliction of
emotional distress, assault, battery, tortious interference with contract, or any claim arising under
Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, the Americans with Disabilities Act,
the Age Discrimination in Employment Act, the Family and Medical Leave Act, the Uniformed
Services Employment and Reemployment Rights Act, the Worker Adjustment and Retraining
Notification Act, the Employee Polygraph Protection Act, the National Labor Relations Act, the
Employee Retirement Income Security Act, or any other federal, state or local law regarding
compensation, employment discrimination or harassment. This release also includes any claims
for attorney's fees or expenses of litigation, except as otherwise provided in this Agreement.

7.    With respect to the foregoing release and waiver, the parties acknowledge that:

a.    Boumehdi's foregoing release and waiver of claims is entered into
knowingly, voluntarily and after consulting with her personal attorney;

b.    Boumehdi acknowledges that the consideration she receives in exchange
for waiving these rights or claims is additional to anything of value to
which she might already be entitled;

c.    Boumehdi has been given at least 21 days within which to consider the
terms of this Agreement;

d.    Boumehdi may revoke this Agreement within seven (7) days after signing
it by delivering written notice of revocation to John Z. Lee at Freeborn &
Peters before the close of business on the seventh day following the date
of Boumehdi's signature, in which case this Agreement shall be null and

void and Boumehdi shall not be entitled to receive the consideration described in Section 2 above;

   e.    This Agreement shall not become effective or enforceable until the expiration of the seven-day revocation period described above;

   f.    The Company has advised Boumehdi in writing to consult with an attorney regarding the effect of this Agreement;

   g.    The parties have read and understand this Agreement in its entirety.

8.    The parties hereby stipulate and agree that nothing contained in this Agreement shall be construed as an admission of liability, culpability or wrongdoing by either party.

9.    This Agreement constitutes the entire understanding between the parties. No promises or agreements not contained in this Agreement shall be binding unless set forth in writing and signed by all the parties.

10.    Should any provision of this Agreement in whole or in part, be held invalid or unenforceable by operation of law or otherwise, all other provisions shall remain in full force and effect and the parties agree that a court may modify any provision to make it valid or enforceable in whole or in part.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement and Release.

JULIE BOUMEHDI                          PLASTAG HOLDINGS, L.L.C.

_____                 By: _____

Date of signature: _____       Its: _CHIEF FINANCIAL OFFICER_

Approval and release of any lien:

_____

5

void and Boumehdi shall not be entitled to receive the consideration described in Section 2 above;

e.    This Agreement shall not become effective or enforceable until the expiration of the seven-day revocation period described above;

f.    The Company has advised Boumehdi in writing to consult with an attorney regarding the effect of this Agreement;

g.    The parties have read and understand this Agreement in its entirety.

8.    The parties hereby stipulate and agree that nothing contained in this Agreement shall be construed as an admission of liability, culpability or wrongdoing by either party.

9.    This Agreement constitutes the entire understanding between the parties. No promises or agreements not contained in this Agreement shall be binding unless set forth in writing and signed by all the parties.

10.    Should any provision of this Agreement in whole or in part, be held invalid or unenforceable by operation of law or otherwise, all other provisions shall remain in full force and effect and the parties agree that a court may modify any provision to make it valid or enforceable in whole or in part.

IN WITNESS WHEREOF, the parties have executed this Settlement Agreement and Release.

JULIE BOUMEHDI

_____

Date of signature: 12/11/07

Approval and release of any lien:

_____

PLASTAG HOLDINGS, L.L.C.

By:_____

Its:_____

1433619v1/24049-0001                    5

Attorney for Julie Boumehdi