IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

PLASTAG HOLDINGS, LLC, a limited liability company, n/k/a PREMIER CARD SOLUTIONS, LLC, a limited liability company,

Plaintiff,

v.

HOUSTON CASUALTY COMPANY, a Texas corporation,

Defendant.

Civil Action No. 08-CV-2968

The Honorable Matthew F. Kennelly

Magistrate Judge Arlander Keys

## ANSWER TO SECOND AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES

Defendant Houston Casualty Company, by its attorneys, Drinker Biddle & Reath LLP, hereby answers the Second Amended Complaint of Plaintiff Plastag Holdings, LLC n/k/a Premier Card Solutions, LLC, denying all averments not expressly admitted, as follows:

1.      This is an insurance coverage action seeking reimbursement of defense costs and settlement amounts that Plastag has incurred in the defense of the lawsuit *Boumehdi v. Plastag Holdings, LLC*, Case No. 04 C 0672 (United States District Court for the Northern District of Illinois) (hereinafter "the *Boumehdi* Lawsuit").

**ANSWER:** Paragraph 1 of the Second Amended Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Defendant admits that Plaintiff has brought this action seeking reimbursement of defense costs and settlement amounts that Plastag incurred in the defense of the lawsuit *Boumehdi v. Plastag Holdings, LLC*, Case No. 04 C 0672 (N.D. Ill.) but denies that Plaintiff is entitled to such relief.

2.      Plastag is a limited liability company organized under the laws of the State of Delaware that has its principal place of business in Elk Grove Village, Illinois. Plastag is one of the

world's largest manufacturers of plastic cards for use in a variety of applications, including magnetic keys, gift cards, bank and ATM cards, casino cards, ID cards, trading cards, etc.

      **ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in Paragraph 2 of the Second Amended Complaint and therefore denies them.

      3.     Plastag is a limited liability company comprised of five (5) members, including four individuals and Valor Equity Partners, LP.

      **ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in Paragraph 3 of the Second Amended Complaint and therefore denies them.

      4.     Three of the individual members of Plastag are citizens of and domiciled in the State of Minnesota.

      **ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in Paragraph 4 of the Second Amended Complaint and therefore denies them.

      5.     The fourth individual member of Plastag is a citizen and domiciled in the State of Oklahoma.

      **ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in Paragraph 5 of the Second Amended Complaint and therefore denies them.

      6.     Valor Equity Partners, LP is a limited partnership organized under the laws of Delaware with its headquarters in Illinois. Valor Equity Partners, LP consists of sixty (60) partners who are citizens of and domiciled in the States of Illinois, Pennsylvania, Michigan, Wyoming, New York, Georgia, California, New Hampshire, Massachusetts, and Connecticut.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in Paragraph 6 of the Second Amended Complaint and therefore denies them.

7.     Neither the individual members of Plastag nor the partners of member Valor Equity Partners, LP are citizens of or domiciled in the State of Texas.

**ANSWER:** Defendant is without knowledge or information sufficient to form a belief as to the truth of the averments set forth in Paragraph 7 of the Second Amended Complaint and therefore denies them.

8.     At all relevant times, HCC was and still is a stock insurance company, incorporated in Texas that has its principal place of business in Houston, Texas.  HCC was and still is engaged in the business of, among other things, underwriting directors, officers and organization liability insurance for businesses.

**ANSWER:** Defendant admits the averments set forth in Paragraph 8 of the Second Amended Complaint.

9.     The subject matter jurisdiction of this Court is based upon 28 U.S.C. § 1332, in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

**ANSWER:** Paragraph 9 of the Second Amended Complaint sets forth legal conclusions to which no response is required.  To the extent that a response is required, Defendant admits that this Court has subject matter jurisdiction over this action.  Defendant denies the remaining averments set forth in Paragraph 9 of the Second Amended Complaint.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 in that the transactions bringing rise to the cause of action herein occurred within this District, including but not limited to

HCC issuing the insurance policy to Plastag in this District, the *Boumehdi* Lawsuit was filed in this District and Plastag incurred defense costs and settlement amounts within this District.

      **ANSWER:** Paragraph 10 of the Second Amended Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Defendant admits that venue is proper in this District and that the *Boumehdi* lawsuit was filed in this District. Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment set forth in Paragraph 10 of the Second Amended Complaint that "Plastag incurred defense costs and settlement amounts within this District" and therefore denies it. Defendant denies the remaining averments set forth in Paragraph 10 of the Second Amended Complaint.

      11.     Plastag purchased a "Directors, Officers and Organization Liability Insurance Policy" from HCC, policy number 14-MG-A1953 (hereinafter "The MAG"). A true and correct copy of The MAG is attached hereto as Exhibit A and incorporated herein by reference.

      **ANSWER:** Defendant states that its Policy, attached as Exhibit A to the Second Amended Complaint, speaks for itself. Defendant admits the remaining averments set forth in Paragraph 11 of the Second Amended Complaint.

      12.     The MAG policy covers the period from March 28, 2003 to March 28, 2004.

      **ANSWER:** Defendant states that Exhibit A speaks for itself. Without waiver of the foregoing, Defendant admits the averments set forth in Paragraph 12 of the Second Amended Complaint.

      13.     Plastag is an "Insured" and an "Insured Organization" as those terms are defined in The MAG policy.

      **ANSWER:** Defendant states that Exhibit A speaks for itself. Without waiver of the foregoing, Defendant admits the averments set forth in Paragraph 13 of the Second Amended Complaint.

14.    HCC is obligated in The MAG policy to pay on behalf of Plastag "Loss" arising from "Claims" first made against Plastag during the policy period for "Wrongful Acts."

**ANSWER:**  Defendant states that Exhibit A speaks for itself.  Defendant further admits that the Policy provides that:

> In consideration of the payment of the premium, and in reliance upon the statements made in the Application, including attachments, all of which are made a part hereof and deemed attached hereto, and subject to the Declarations and the limitations, conditions, provisions, any endorsements to and all other terms of this policy, the Insurer and the Insureds agree as follows:
>
> INSURING AGREEMENTS
>
> ***
>
> (B)    The Insurer will pay to or on behalf of the Insured Organization Loss arising from Claims first made against it during the Policy Period or Discovery Period (if applicable) for Wrongful Acts.

Defendant denies all remaining averments set forth in Paragraph 14 of the Second Amended Complaint.

15.    The MAG policy defines "Loss" as "Defense Costs and any damages, settlements, judgments . . . or other amounts . . . that [Plastag] is legally obligated to pay as a result of any Claim . . . ."

**ANSWER:**  Defendant states that Exhibit A speaks for itself.  Defendant denies the remaining averments set forth in Paragraph 15 of the Second Amended Complaint to the extent that they are not a complete and accurate quotation of the Policy definition of "Loss."

16.     The MAG policy defines "Defense Costs" as "reasonable legal fees, costs and expenses consented to by [HCC] (including premiums for any appeal bond, attachment bond or similar bond) resulting from the investigation, adjustment, defense or appeal of a Claim against [Plastag], but excluding salaries, wages, benefits or overhead expenses of any Insured Person."

**ANSWER:** Defendant states that Exhibit A speaks for itself. Defendant denies the remaining averments set forth in Paragraph 15 of the Second Amended Complaint to the extent that they are not a complete and accurate quotation of the Policy definition of "Defense Costs."

17.     The MAG policy defines "Wrongful Act" in relevant part as "Employment Practices Wrongful Act," which is defined to include, *inter alia*, "Discrimination," "Sexual Harassment," "Workplace Harassment," or "Wrongful Termination."

**ANSWER:** Defendant states that Exhibit A speaks for itself. Defendant denies the remaining averments set forth in Paragraph 15 of the Second Amended Complaint to the extent that they are not a complete and accurate quotation of the Policy definition of "Wrongful Act."

18.     The MAG policy provides that HCC will be liable only for the amount of "Loss" in connection with any "Claim" that is in excess of the $50,000 retention. Plastag is responsible for payment of the $50,000 retention in connection with any "Claim."

**ANSWER:** Defendant states that Exhibit A speaks for itself. Defendant denies the remaining averments set forth in Paragraph 15 of the Second Amended Complaint to the extent that they misstate all applicable Policy provisions.

19.     The MAG policy, CONDITIONS, Section (D), <u>Defense Costs, Settlements, Allocation</u>, provides in pertinent part as follows:

> (1) The Insurer will have no duty under this Policy to defend any Claim. The Insureds must defend any Claim against them. The Insured may not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without Insurer's prior written consent, which consent may not be unreasonably withheld. Only those settlements, stipulated judgments and Defense Costs to which the Insurer has consented will

be recoverable as Loss under the Policy. The Insurer will be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim.

(2) The Insurer will pay covered Defense Costs on an as-incurred basis. If it is finally determined that any Defense Costs paid by the Insurer are not covered under this Policy, the Insureds agree to repay such non-covered Defense Costs to the Insurer.

(3) If Loss covered by this Policy and loss not covered by this Policy are both incurred in connection with a single Claim, either because the Claim includes both covered and uncovered matters, or because the Claim is made both against Insureds and against others not included within the definition of Insured, the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts . . . The Insurer will be obligated to pay only those amounts or portions of Loss allocated to covered matters claimed against Insureds. If the Insureds and the Insurer are unable to agree upon an allocation, then until a final allocation is agreed upon or determined pursuant to the provisions of this Policy and applicable law, the Insurer will be obligated an interim payment of that amount or portion of Loss, including Defense Costs, which the parties agree is not in dispute.

**ANSWER:** Defendant admits that Exhibit A includes the quoted portions thereof set forth in Paragraph 19 of the Second Amended Complaint.

20.    On or about August 5, 2003, plaintiff Julie Boumehdi filed a Charge of Discrimination against Plastag with the Equal Employment Opportunity Commission, alleging that her employer Plastag had discriminated against her on the basis of her gender. A true and correct copy Ms. Boumehdi's Charge of Discrimination is attached hereto as Exhibit B.

**ANSWER:** Defendant states that the Charge of Discrimination attached as Exhibit B to the Second Amended Complaint speaks for itself. Defendant is without knowledge or information sufficient to form a belief as to the truth of the remaining averments set forth in Paragraph 20 of the Second Amended Complaint and therefore denies them.

21.    Upon information and belief, on October 24, 2003, the EEOC issued a Dismissal and Notice of Rights to Ms. Boumehdi concerning the Charge of Discrimination. Upon information and belief, the EEOC sent the Dismissal and Notice of Rights to Ms. Boumehdi again

on December 19, 2003. A true and correct copy of the Dismissal and Notice of Rights is attached

hereto as Exhibit C.

      **ANSWER:** Defendant states that the Dismissal and Notice of Rights attached as

Exhibit C to the Second Amended Complaint speaks for itself. Defendant is without knowledge or

information sufficient to form a belief as to the truth of the remaining averments set forth in

Paragraph 21 of the Second Amended Complaint and therefore denies them.

      22.     On January 28, 2004, Ms. Boumehdi filed a Complaint of Employment

Discrimination against Plastag in the United States District Court for the Northern District of

Illinois. A true and correct copy of the Complaint of Employment Discrimination is attached hereto

as Exhibit D.

      **ANSWER:** Defendant states that the Complaint of Employment Discrimination attached

as Exhibit D to the Second Amended Complaint speaks for itself. Defendant is without knowledge

or information sufficient to form a belief as to the truth of the remaining averments set forth in

Paragraph 22 of the Second Amended Complaint and therefore denies them.

      23.     On July 14, 2004, Ms. Boumehdi filed an Amended Complaint at Law against Plastag

in the United States District Court for the Northern District of Illinois. A true and correct copy of

the Amended Complaint at Law is attached hereto as Exhibit E.

      **ANSWER:** Defendant states that the Amended Complaint at Law attached as Exhibit E to

the Second Amended Complaint speaks for itself. Defendant is without knowledge or information

sufficient to form a belief as to the truth of the remaining averments set forth in Paragraph 20 of the

Second Amended Complaint and therefore denies them.

      24.     Plastag notified HCC of the *Boumehdi* Lawsuit and HCC responded to that Notice on

July 20, 2005. In the July 20, 2005 letter, HCC informed Plastag that it "accepts this matter for

coverage subject to the Policy's terms, conditions and limitation, including those discussed herein." A true and correct copy of HCC's July 20, 2005 letter is attached hereto as Exhibit F.

**ANSWER**: Defendant states that the July 20, 2005 attached as Exhibit F to the Second Amended Complaint speaks for itself. Defendant admits that Plaintiff provided Defendant with notice of the *Boumehdi* lawsuit and that Defendant responded to that notice on July 20, 2005. Defendant denies the remaining averments of Paragraph 24 of the Second Amended Complaint to the extent that they differ in any way from Exhibit F.

25.     In the July 20, 2005 letter, HCC asserted that The MAG policy gave HCC the right to approve Plastag's choice of counsel to defend the *Boumehdi* Lawsuit. As a condition to that approval, Plastag's defense counsel had to abide by HCC's Defense Counsel Guidelines.

**ANSWER**: Defendant states that Exhibit F speaks for itself. Defendant further admits that Exhibit F cited to Condition (D)(1) of the Policy as respects Plaintiff's, not Defendant's, duty to defend, and as respects the Policy's requirement that Plaintiff may not incur any Defense Costs without Defendant's prior written consent. Defendant denies all remaining averments set forth in Paragraph 25 of the Second Amended Complaint.

26.     HCC acknowledged in its July 20, 2005 letter that the Boumehdi Lawsuit alleged that Plastag was liable for "Wrongful Acts" that allegedly had occurred during the period of The MAG policy.

**ANSWER**: Defendant denies the averments set forth in Paragraph 26 of the Second Amended Complaint to the extent that they differ in any way from Exhibit F.

27.     Notwithstanding its assertion in its July 20, 2005 letter that it did not have a duty to defend Plastag in the *Boumehdi* Lawsuit pursuant to The MAG policy, and that Plastag was responsible for defending itself and paying defense costs until the $50,000 retention had been

exhausted by such payments, HCC assumed control over the defense of the *Boumehdi* Lawsuit after July 20, 2005.

    **ANSWER:** Defendant denies the averments set forth in Paragraph 27 of the Second Amended Complaint.

    28.    HCC directed Plastag's defense counsel in defending the *Boumehdi* Lawsuit and required defense counsel to obtain HCC's approval before performing any significant action or incurring any significant costs in that defense. HCC still required Plastag to pay defense costs until the $50,000 retention was exhausted.

    **ANSWER:** Defendant denies the averments set forth in Paragraph 28 of the Second Amended Complaint.

    29.    HCC induced Plastag to surrender control of the defense of the *Boumehdi* Lawsuit by HCC asserting its rights to control the defense, to approve the selection and conduct of defense counsel, and to consent to all "Defense Costs" incurred in the defense of the *Boumehdi* Lawsuit. Indeed, Plastag had no choice but to submit to HCC's control of the defense of the *Boumehdi* Lawsuit. If Plastag had attempted to defend the *Boumehdi* Lawsuit without obtaining HCC's prior written consent, as required by The MAG policy, HCC would not have been obligated to pay for that defense and would have disclaimed coverage by asserting that Plastag failed to cooperate with HCC in the defense and failed to allow HCC "to effectively associate in the defense" of the *Boumehdi* Lawsuit.

    **ANSWER:** Defendant denies the averments set forth in Paragraph 29 of the Second Amended Complaint.

    30.    HCC did not inform Plastag that HCC had a conflict of interest that prevented HCC from assuming control of the defense of the *Boumehdi* Lawsuit and gave Plastag rights to independent counsel and to control the defense, even after the $50,000 retention had been

exhausted. This conflict of interest consisted of allegations in the *Boumehdi* Lawsuit that Ms.

Boumehdi allegedly had been discriminated against both prior to and after March 28, 2003, the

effective date of The MAG policy. The MAG policy excludes coverage for "Loss in connection

with a Claim arising out of, based upon or attributable to any Wrongful Act committed or allegedly

committed, in whole or in part, prior to 3/28/03." HCC had an incentive to steer the defense of

the *Boumehdi* Lawsuit towards a finding that alleged discrimination had occurred prior to March 28,

2003, which might have resulted in some or all of Plastag's alleged liability not being insured.

    **ANSWER:** Defendant admits that Exhibit F excludes coverage for Loss in connection with

a Claim arising out of, based upon or attributable to any Wrongful Act committed or allegedly

committed, in whole or in part, prior to March 28, 2003. Defendant denies the remaining averments

set forth in Paragraph 30 of the Second Amended Complaint.

    31.    Plastag was prejudiced by HCC's assumption of the defense of the *Boumehdi* Lawsuit.

This prejudice manifested itself in, among other ways, Plastag surrendering control of the defense,

and HCC's ability to mold the defense in ways favorable to HCC and contrary to Plastag's interests,

including steering the defense towards a finding that discrimination had occurred prior to March 28,

2003.

    **ANSWER:** Defendant denies the averments set forth in Paragraph 31 to the Second

Amended Complaint.

    32.    By March of 2006, in excess of $50,000 had been incurred in defending the *Boumehdi*

Lawsuit. Plastag informed HCC of this and requested that HCC begin paying defense costs due to

the exhaustion of the $50,000 retention in The MAG policy.

    **ANSWER:** Defendant admits that in or around March 2006, Plaintiff notified Defendant

that Plaintiff had paid invoices to date totaling $50,000 with respect to the *Boumehdi* lawsuit.

Defendant denies the remaining averments set forth in Paragraph 32 of the Second Amended Complaint.

33.     HCC responded by asserting, for the first time, that there needed to be a determination of what alleged "Wrongful Acts" had allegedly occurred prior to March 28, 2003 and what alleged "Wrongful Acts" had allegedly occurred after March 28, 2003, and that defense costs needed to be allocated among these alleged "Wrongful Acts," such that Plastag would continue to be responsible for paying defense costs allocated to alleged "Wrongful Acts" that allegedly had occurred prior to March 28, 2003.

**ANSWER:** Defendant denies the averments set forth in Paragraph 33 of the Second Amended Complaint.

34.     At no time prior to March of 2006 had HCC demanded that defense costs be allocated in this way. Plastag had paid all defense costs incurred in the defense of the *Boumehdi* Lawsuit up to that point, and HCC had consented to those defense costs, without any allocation.

**ANSWER:** Defendant denies the averments set forth in Paragraph 34 of the Second Amended Complaint.

35.     On September 27, 2006, HCC wrote a letter to Plastag in which HCC denied coverage entirely for the *Boumehdi* Lawsuit. A true and correct copy of HCC's September 27, 2006 letter is attached hereto as Exhibit G. HCC asserted that there was no coverage for the *Boumehdi* Lawsuit because it alleged that "Wrongful Acts" had occurred prior to March 28, 2003, and that Plastag had not given HCC timely notice of Ms. Boumehdi's "Claim." HCC had not raised the timing of Plastag's notice of the *Boumehdi* Lawsuit or Claim as a defense to coverage prior to September 27, 2006.

**ANSWER:** Defendant states that the September 27, 2006, letter attached as Exhibit G to the Second Amended Complaint speaks for itself. Defendant denies the remaining averments set forth in Paragraph 35 of the Second Amended Complaint.

36.    HCC never paid any defense costs incurred in the *Boumehdi* Lawsuit above the $50,000 retention in The MAG policy. HHCC never attempted to allocate defense costs incurred either within or above the $50,000 retention. HCC never made any interim payments of the amount or portion of defense costs which the parties agreed was not in dispute.

**ANSWER:** Defendant admits that it has not made any payments in connection with the *Boumehdi* lawsuit. Defendant denies the remaining averments set forth in Paragraph 36 of the Second Amended Complaint.

37.    After HCC denied coverage for the *Boumehdi* Lawsuit on September 27, 2006, Plastag began to defend itself in that Lawsuit. Plastag incurred a total of approximately $285,000 to defend itself against the *Boumehdi* Lawsuit.

**ANSWER:** Defendant denies that Plaintiff began to defend itself in the *Boumehdi* lawsuit "[a]fter [Defendant] denied coverage for the *Boumehdi* lawsuit[.]" Defendant is without knowledge or information sufficient to form a belief as to the truth of the averment set forth in Paragraph 37 of the Second Amended Complaint that "Plastag incurred a total of $285,000 to defend itself against the *Boumehdi* lawsuit" and therefore denies it. Defendant denies the remaining averments set forth in Paragraph 37 of the Second Amended Complaint.

38.    In October of 2007, Plastag wanted to attempt to settle the *Boumehdi* Lawsuit. Plastag wrote to HCC and requested that it participate in the settlement negotiations. On October 12, 2007, HCC wrote a letter to Plastag in which HCC reaffirmed its denial of coverage and refused to participate in the settlement negotiations. A true and correct copy of HCC's October 12, 2007 letter is attached hereto as Exhibit H.

**ANSWER:** Defendant admits that in October 2007, Plaintiff requested that Defendant pay the full amount of a settlement it was negotiating with Boumehdi. Defendant states that the October 12, 2007, letter attached as Exhibit H to the Second Amended Complaint speaks for itself. Defendant denies the remaining averments set forth in Paragraph 38 of the Second Amended Complaint.

39.     On December 11, 2007, Plastag settled the *Boumehdi* Lawsuit with a payment of $285,000 to Ms. Boumehdi. A true and correct copy of the December 11, 2007 settlement agreement is attached hereto as Exhibit I.

**ANSWER:** Defendant states the Settlement Agreement and Release attached as Exhibit I to the Second Amended Complaint speaks for itself. Defendant denies the remaining averments set forth in Paragraph 39 of the Second Amended Complaint.

**COUNT ONE**

**<u>Breach of Contract</u>**

40.     Plastag hereby incorporates by reference paragraphs 1 through 39 as if fully set forth herein this Count I.

**ANSWER:** Defendant hereby incorporates by reference its responses to Paragraphs 1 through 39 of the Second Amended Complaint as if fully set forth herein.

41.     Plastag has paid all premiums called for in The MAG policy.

**ANSWER:** Defendant admits the averments set forth in Paragraph 41 of the Second Amended Complaint.

42.     Plastag has fully and timely complied with all of the conditions precedent to coverage provided in The MAG policy. In the alternative, HCC has waived compliance with all conditions precedent and/or is estopped from asserting or relying on the conditions precedent in The MAG policy.

**ANSWER:** Defendant denies the averments set forth in Paragraph 42 of the Second Amended Complaint.

43.    As alleged above, HCC agreed under the terms and conditions of The MAG policy to pay on behalf of Plastag "Loss" arising form "Claims" first made against Plastag during the policy period for "Wrongful Acts."

**ANSWER:** Defendant admits the averments set forth in Paragraph 43 of the Second Amended Complaint.

44.    As alleged above, HCC agreed under the terms and conditions of The MAG policy to pay on behalf of Plastag "Loss" arising from "Claims" first made against Plastag during the policy period for "Wrongful Acts."

**ANSWER:** Defendant states that Exhibit A speaks for itself.  Defendant denies the averments set forth in Paragraph 44 to the extent that they differ from Exhibit A.

45.    As alleged above, HCC agreed under the terms alleging "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

**ANSWER:** Defendant states that Exhibit A speaks for itself.  Defendant denies the averments set forth in Paragraph 45 to the extent that they differ from Exhibit A.

46.    The *Boumehdi* Lawsuit was a "Claim" first made against Plastag during the policy period that alleged "Wrongful Acts," such that HCC was obligated to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention under the terms and conditions of The MAG policy.

**ANSWER:** Defendant denies the averments set forth in Paragraph 46 of the Second Amended Complaint.

47.    HCC admitted that it had an obligation to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention for the *Boumehdi* Lawsuit because the Lawsuit alleged "Loss" arising from a

"Claim" first made against Plastag during the policy period for "Wrongful Acts" that was at least potentially covered under The MAG policy.

**ANSWER:** Defendant denies the averments set forth in Paragraph 47 of the Second Amended Complaint.

48.    As alleged above, HCC agreed under the terms and conditions of The MAG policy to pay "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

**ANSWER:** Defendant states that Exhibit A speaks for itself. Defendant denies the averments set forth in Paragraph 48 to the extent that they differ from Exhibit A.

49.    The settlement of the *Boumehdi* Lawsuit is a "Loss," such that HCC is obligated to reimburse Plastag for the settlement amount under the terms and conditions of The MAG policy.

**ANSWER:** Defendant denies the averments set forth in Paragraph 49 of the Second Amended Complaint.

50.    HCC committed substantial and material breaches of its contractual obligations under The MAG policy by wrongfully denying Plastag full coverage under the terms of The MAG policy, including failing to pay and/or reimburse Plastag all reasonable defense costs above the $50,000 retention as they were incurred in the defense of the *Boumehdi* Lawsuit and assuming control over the defense of the *Boumehdi* Lawsuit.

**ANSWER:** Defendant denies the averments set forth in Paragraph 50 of the Second Amended Complaint.

51.    Plastag has suffered, and continues to suffer, as a direct and proximate result of HCC's contractual breaches of The MAG policy substantial monetary damages totaling in excess of $520,000, exclusive of interest and costs associated with this lawsuit.

**ANSWER:** Defendant denies the averments set forth in Paragraph 51 of the Second Amended Complaint.

Defendant denies that Plaintiff is entitled to judgment against Defendant as set forth in the prayer for relief in the unnumbered paragraph following Paragraph 51 of the Second Amended Complaint.

## COUNT TWO

### Declaratory Judgment

52.     Plastag hereby incorporates by reference paragraphs 1 through 51 as if fully set forth herein this Count II.

**ANSWER:**  Defendant hereby incorporates by reference its responses to Paragraphs 1 through 51 of the Second Amended Complaint as if fully set forth herein.

53.     HCC agreed under the terms and conditions of The MAG policy to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention in a lawsuit alleging "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

**ANSWER:**  Defendant states that Exhibit A speaks for itself.  Defendant denies the averments set forth in Paragraph 53 to the extent that they differ from Exhibit A.

54.     HCC agreed under the terms and conditions of The MAG policy to pay "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts."

**ANSWER:**  Defendant states that Exhibit A speaks for itself.  Defendant denies the averments set forth in Paragraph 54 to the extent that they differ from Exhibit A.

55.     HCC has failed to fulfill or acknowledge its obligation to pay or reimburse Plastag for defense costs as they were incurred and settlement amounts in the *Boumehdi* Lawsuit as required under the terms of The MAG policy.

**ANSWER:**  Defendant denies the averments set forth in Paragraph 55 of the Second Amended Complaint.

56.     An actual and justiciable controversy presently exists between Plastag and HCC concerning HCC's obligation to pay or reimburse Plastag for the defense costs as they were incurred and settlement amounts above $50,000 in the *Boumehdi* Lawsuit, which total in excess of $520,000, pursuant to the terms of The MAG policy.

**ANSWER:** Defendant admits that Plaintiff seeks a determination that Defendant is obligated to pay or reimburse Plaintiff for defense costs and the settlement amount that Plaintiff paid in the *Boumehdi* lawsuit which exceed the Policy's Retention, but denies that it has any obligation to make such payment or reimbursement. Defendant denies all remaining averments set forth in Paragraph 56 of the Second Amended Complaint.

57.     HCC has failed to acknowledge that Plastag had the right to control the defense of the *Boumehdi* Lawsuit based on the conflict of interest between HCC and Plastag.

**ANSWER:** Defendant denies the averments set forth in Paragraph 57 of the Second Amended Complaint.

58.     An actual and justiciable controversy presently exists between Plastag and HCC concerning HCC's right to control the defense of the *Boumehdi* Lawsuit.

**ANSWER:** Defendant admits that Plaintiff seeks a determination that Defendant improperly controlled the defense of the *Boumehdi* lawsuit, but denies that it ever asserted a right to control the *Boumehdi* lawsuit or that it in fact ever controlled the *Boumehdi* lawsuit. Defendant denies all remaining averments set forth in Paragraph 58 of the Second Amended Complaint.

Defendant denies that Plaintiff is entitled to any determination and/or declaration that Defendant has any payment or reimbursement obligations towards Plaintiff, as set forth in the prayer for relief in the unnumbered paragraph following Paragraph 58 of the Second Amended Complaint.

## COUNT THREE

### Estoppel

59.     Plastag hereby incorporates by reference paragraphs 1 through 58 as if fully set forth herein this Count III.

**ANSWER:** Defendant hereby incorporates by reference its responses to Paragraphs 1 through 58 of the Second Amended Complaint as if fully set forth herein.

60.     HCC had a duty to pay and/or reimburse Plastag for "Defense Costs" on an "as-incurred basis" incurred above the $50,000 retention in The MAG policy in the defense of the *Boumehdi* Lawsuit.

**ANSWER:** Defendant denies the averments set forth in Paragraph 60 of the Second Amended Complaint.

61.     HCC admitted that it had an obligation to pay "Defense Costs" on an "as-incurred basis" above the $50,000 retention for the *Boumehdi* Lawsuit because the Lawsuit alleged "Loss" arising from a "Claim" first made against Plastag during the policy period for "Wrongful Acts" that was at least potentially covered under The MAG policy.

**ANSWER:** Defendant denies the averments set forth in Paragraph 61 of the Second Amended Complaint.

62.     HCC committed substantial and material breaches of its contractual obligations under The MAG policy by wrongfully failing to pay and/or reimburse Plastag for "Defense Costs" incurred in the defense of the *Boumehdi* Lawsuit above the $50,000 retention.

**ANSWER:** Defendant denies the averments set forth in Paragraph 62 of the Second Amended Complaint.

63.     After denying coverage for the *Boumehdi* Lawsuit on September 27, 2006, HCC did not pay and/or reimburse Plastag for "Defense Costs" incurred in the defense of the *Boumehdi* Lawsuit above the $50,000 retention under a reservation of rights.

**ANSWER:** Defendant admits that it did not pay or reimburse Plaintiff for "Defense Costs," as that term is defined in its Policy, that Plaintiff incurred in the defense of the *Boumehdi* lawsuit, but denies the remaining averments set forth in Paragraph 63 of the Second Amended Complaint.

64.    After denying coverage for the *Boumehdi* Lawsuit on September 27, 2006, HCC did not file a declaratory judgment action seeking a declaration that it had no obligation to pay and/or reimburse Plastag for "Defense Costs" or "Loss" in connection with the *Boumehdi* Lawsuit prior to the settlement of the Lawsuit on December 11, 2007.

**ANSWER:** Defendant admits that it did not file a declaratory judgment seeking a declaration that it had no obligation to pay or reimburse Plaintiff for "Defense Costs" or other "Loss," as those terms are defined in Defendant's Policy, but denies the remaining averments set forth in Paragraph 64 of the Second Amended Complaint.

65.    Consequently, HCC is estopped from asserting any defenses to coverage for the "Defense Costs" and settlement amounts Plastag paid in the *Boumehdi* Lawsuit, including but not limited to the defenses that the Lawsuit alleged that "Wrongful Acts" allegedly occurred prior to March 28, 2003 and that Plastag did not give timely notice of the Claim.

**ANSWER:** Defendant denies the averments set forth in Paragraph 65 of the Second Amended Complaint.

66.    Furthermore, The MAG policy, reading all of its provisions together, purports to give HCC the right to control all aspects of the defense of lawsuits filed against Plastag. Concomitant with its right to control the defense of lawsuits, HCC had a duty to protect Plastag's interests in exercising that right and thus had a duty to defend Plastag in the *Boumehdi* Lawsuit.

**ANSWER:** Defendant denies the averments set forth in Paragraph 66 of the Second Amended Complaint.

67.     HCC breached its duties to protect Plastag's interests and to defend Plastag in the *Boumehdi* Lawsuit when it abandoned Plastag and denied coverage for the Lawsuit on September 27, 2006.

**ANSWER:**  Defendant denies the averments set forth in Paragraph 67 of the Second Amended Complaint.

68.     Consequently, HCC is estopped from asserting any defenses to coverage for the "Defense Costs" and settlement amounts Plastag paid in the *Boumehdi* Lawsuit, including but not limited to the defenses that the Lawsuit alleged that "Wrongful Acts" allegedly occurred prior to March 28, 2003 and that Plastag did not give timely notice of the Claim.

**ANSWER:**  Defendant denies the averments set forth in Paragraph 68 of the Second Amended Complaint.

69.     In addition, HCC was prohibited from assuming the defense of the *Boumehdi* Lawsuit by the existence of the conflict of interest that arose because the *Boumehdi* Lawsuit alleged that "Wrongful Acts" occurred both before and after March 28, 2003. HCC failed to inform Plastag of this conflict of interest, and assumed control of the defense of the *Boumehdi* Lawsuit notwithstanding the conflict of interest. As a result, Plastag was prejudiced by HCC's assumption of the defense.

**ANSWER:**  Defendant denies the averments set forth in Paragraph 69 of the Second Amended Complaint.

70.     Consequently, HCC is estopped from asserting any defenses to coverage for the "Defense Costs" and settlement amounts Plastag paid in the *Boumehdi* Lawsuit, including but not limited to the defenses that the Lawsuit alleged that "Wrongful Acts" allegedly occurred prior to March 28, 2003 and that Plastag did not give timely notice of the Claim.

**ANSWER:**  Defendant denies the averments set forth in Paragraph 70 of the Second Amended Complaint.

Defendant denies that Plaintiff is entitled to any determination and/or declaration that Defendant has any payment or reimbursement obligations towards Plaintiff, as set forth in the prayer for relief in the unnumbered paragraph following Paragraph 70 of the Second Amended Complaint.

## COUNT FOUR

### Waiver

71.    Plastag hereby incorporates by reference paragraphs 1 through 70 as if fully set forth herein this Count IV.

**ANSWER:**  Defendant hereby incorporates by reference its responses to Paragraphs 1 through 70 of the Second Amended Complaint as if fully set forth herein.

72.    No later than July 20, 2005, HCC was aware of all relevant facts that HCC contended supported its assertion that Plastag had not given timely notice of the *Boumehdi* Claim.

**ANSWER:**  Defendant denies the averments set forth in Paragraph 72 of the Second Amended Complaint.

73.    HCC did not deny coverage based on the assertion that Plastag had not given timely notice of the *Boumehdi* Claim until September 27, 2006, over 14 months later.

**ANSWER:**  Defendant admits that it denied coverage for the *Boumehdi* lawsuit on September 27, 2006, but denies the remaining averments set forth in Paragraph 73 of the Second Amended Complaint.

74.    Consequently, HCC knowingly waived the defense to coverage that Plastag had not given timely notice of the *Boumehdi* Claim and cannot assert this defense as a basis to deny coverage for the *Boumehdi* Lawsuit.

**ANSWER:**  Defendant denies the averments set forth in Paragraph 74 of the Second Amended Complaint.

Defendant denies that Plaintiff is entitled to any determination and/or declaration that Defendant has any payment or reimbursement obligations towards Plaintiff, as set forth in the prayer for relief in the unnumbered paragraph following Paragraph 74 of the Second Amended Complaint.

## COUNT FIVE

### Illinois Insurance Code Section 155

75.　　Plastag hereby incorporates by reference paragraphs 1 through 74 as if fully set forth herein this Count V.

**ANSWER:**　Defendant hereby incorporates by reference its responses to Paragraphs 1 through 74 of the Second Amended Complaint as if fully set forth herein.

76.　　Based on the foregoing, HCC vexatiously and unreasonably delayed and denied payment of Plastag's defense costs and settlement amounts above $50,000 in the *Boumehdi* Lawsuit.

**ANSWER:**　Defendant denies the averments set forth in Paragraph 76 of the Second Amended Complaint.

77.　　Pursuant to Section 155 of the Illinois Insurance Code, 215 ILCS 5/155, Plastag is entitled to recover as part of the taxable costs in this action its reasonable attorneys' fees and costs incurred in bringing this action, plus an amount not to exceed any one of the following amounts: (a) 60% of the amount which the court or jury finds Plastag is entitled to recover against HCC, exclusive of costs; (b) $60,000; or (c) the excess of the amount which the court or jury finds Plastag is entitled to recover, exclusive of costs, over the amount, if any, which HCC offered to pay in settlement of the claim prior to this action.

**ANSWER:**　Paragraph 77 of the Second Amended Complaint sets forth legal conclusions to which no response is required. To the extent that a response is required, Defendant denies the averments set forth in Paragraph 77 of the Second Amended Complaint.

Defendant denies that Plaintiff is entitled to any determination and/or declaration that Defendant is obligated to pay Plaintiff's reasonable attorneys' fees and costs incurred in bringing this action or any other amounts, as set forth in the prayer for relief in the unnumbered paragraph following Paragraph 77 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed based on the doctrine of waiver.

### THIRD AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed based on the doctrine of estoppel.

### FOURTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed based on the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed because, at all relevant times, Defendant complied with all of its contractual obligations and with all applicable laws, regulations, and standards.

### SIXTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed because Defendant has and continues to act at all times in good faith in all of its coverage decisions.

### SEVENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed because coverage is precluded by the applicable provisions, terms, conditions, limitations, and exclusions of Defendant's Policy and/or by public policy or express provision of law.

## EIGHTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed based on Plaintiff's failure to provide notice of the *Boumehdi* lawsuit to Defendant in accordance with the applicable provisions, terms, conditions, limitations, and exclusions of Defendant's Policy.

## NINTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent it seeks recovery of "Defense Costs" and/or "Loss," as those terms are defined in Defendant's Policy, which were incurred prior to and without seeking Defendant's consent.

## TENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed because Defendant never unreasonably withheld consent to incur "Defense Costs" and/or "Loss," as those terms are defined in Defendant's Policy.

## ELEVENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed based on Plaintiff's breach of Defendant's prior Policy.

## TWELVTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed because Plaintiff's actions or omissions compromised, precluded, or prejudiced Defendant's rights of recovery against third parties for any liability Defendant may have under its Policy for the *Boumehdi* lawsuit.

## THIRTEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed based on Plaintiff's failure to report the *Boumehdi* lawsuit in connection with its application to renew its prior policy with Defendant.

## FOURTEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed based on Plaintiff's failure to respond in a timely and complete manner to all of Defendant's reasonable requests for documents concerning the status of the *Boumehdi* lawsuit and "Defense Costs," as that term is defined in the Policy, related thereto.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any Claim made against Plaintiff prior to March 28, 2003.

## SIXTEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any Claim made against Plaintiff that alleges, arises out of, is based upon, or is attributable to the same facts, circumstances, situations, transactions or events or to a series of related facts, circumstances, situations, transactions or events as any claim made against Plaintiff prior to the inception of coverage.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any Claim made against Plaintiff alleging intentional misconduct.

## EIGHTEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any Claim made against Plaintiff alleging matters uninsurable under the law pursuant to which Defendant's Policy is to be construed.

## NINETEENTH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any Claim to the extent that any portion of such claim seeks relief or redress in any form other than money damages.

## TWENTIETH AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any payments excluded from the Policy definition of Loss.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any non-covered Defense Costs, as that term is defined in Defendant's Policy.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The Second Amended Complaint should be dismissed to the extent that it seeks coverage for any Claim covered by any other valid and collectible insurance.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

To the extent that any coverage is available under the Policy, there must be an allocation between Loss covered by the Policy and loss not covered by the Policy.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

The rights and obligations of Defendant and Plaintiff are defined and controlled by the limits of liability, terms, exclusions, conditions and other provisions of Defendant's Policy, which cannot all be itemized as affirmative defenses, and are therefore incorporated by reference herein.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Houston Casualty Company prays:

1.      That Plaintiff take nothing by the Second Amended Complaint;

2.      For the costs of suit incurred herein;

3.      For reasonable attorneys' fees; and

4.      For such other and further relief as this Court deems just and proper.


Dated: July 21, 2008                                 Respectfully submitted,



                                                     /s/ B. Todd Vinson
                                                     Attorney for Defendant
                                                     HOUSTON CASUALTY COMPANY

B. Todd Vinson - ARDC No. 6276105
Drinker Biddle & Reath LLP
191 N. Wacker Drive
Suite 3700
Chicago, Illinois  60606-1698
(312) 569-1496 (Todd Vinson direct dial)
(312) 569-3496 (direct facsimile)
todd.vinson@dbr.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Paul R. Walker-Bright, Esquire
Evan Thomas Knott, Esquire
James M. Davis, Esquire
Reed Smith LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606
Phone: (312) 207-1000
Email: pwalker-bright@reedsmith.com
Email: eknott@reedsmith.com
Email: jmdavis@reedsmith.com
*Counsel for Plaintiff*

/s/ B. Todd Vinson
B. Todd Vinson - ARDC No. 6276105
Drinker Biddle & Reath LLP
191 N. Wacker Drive
Suite 3700
Chicago, Illinois  60606-1698
Telephone: (312) 569-1000
Facsimile: (312) 569-3000
E-mail: todd.vinson@dbr.com